# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879**

---

| | |
|---|---|
| Appellate Court Caption | THE ROCK RIVER TIMES and JOE McGEHEE, Plaintiffs-Appellants and Cross-Appellees, v. ROCKFORD PUBLIC SCHOOL DISTRICT 205, Defendant-Appellee and Cross-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0879 |
| Filed | October 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff newspaper was not entitled to attorney fees in its action under the Freedom of Information Act seeking the disclosure of a letter written by a principal at defendant school explaining why he left his employment, since the school disclosed the letter before the trial court ordered any relief and plaintiff was not a "prevailing party," but the school's wilful and intentional violation of the Act warranted the imposition of a civil penalty of $2,500. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-MR-768; the Hon. Eugene G. Doherty, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on  Donald M. Craven and Esther J. Seitz, both of Donald M. Craven, P.C.,
Appeal  of Springfield, for appellants.

Thomas J. Lester, Nancy G. Lischer, and Michael F. Iasparro, all of
Hinshaw & Culbertson LLP, of Chicago, for appellee.

Panel  JUSTICE BOWMAN delivered the judgment of the court, with opinion.[1]
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     At the heart of this dispute is a letter written by a school principal in response to a reprimand by the superintendent. The Rock River Times and Joe McGehee (collectively, the newspaper) requested the letter from the Rockford Public School District (school), which initially refused to release it on the basis of various exemptions. The newspaper filed suit against the school under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2010)) and filed a petition for attorney fees and the imposition of a civil penalty. The school released the letter before the court issued a ruling and then moved for summary judgment on the petition. The court denied the newspaper's petition for attorney fees and thus granted the school's motion for summary judgment to this effect. The court granted the newspaper's request for a civil penalty to be imposed against the school. Both parties appeal the adverse rulings. We affirm.

¶ 2                     I. BACKGROUND

¶ 3     On November 3, 2010, the newspaper filed a complaint against the school. The complaint and attached exhibits demonstrate the following. On June 19, 2010, principal Patrick Hardy sent a rebuttal letter in response to a "Separation of Employment" letter written to him by superintendent LaVonne Sheffield. Apparently, Hardy's rebuttal letter disputed Sheffield's version of events and provided a detailed explanation of why he decided to leave the school's employ. On August 26, 2010, McGehee, a writer at the newspaper, requested a copy of Hardy's rebuttal letter, pursuant to the FOIA.

¶ 4     On September 1, 2010, the school advised McGehee of its intent to deny disclosure of the rebuttal letter, based on two exemptions of the FOIA. The first claimed exemption, under section 7(1)(c), was based on personal privacy. See 5 ILCS 140/7(1)(c) (West 2010). The

---

[1]Justice Bowman participated in this appeal and authored the opinion, but has since passed away. Our supreme court has held that the departure of an authoring judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Kinne v. Duncan*, 383 Ill. 110, 113-14 (1943).

second, under section 7.5(q), prevented disclosures otherwise prohibited under the Personnel Record Review Act (820 ILCS 40/0.01 *et seq.* (West 2010)). See 5 ILCS 140/7.5(q) (West 2010). Also on September 1, the school sent the office of the Public Access Counselor (PAC) a preauthorization request indicating its intent to deny disclosure under these two exemptions. On September 13, PAC denied the school's request to use the personal privacy exemption under section 7(1)(c), because the school had failed to show that the information in the rebuttal letter was highly personal or objectionable. PAC did not address the school's second claimed exemption, under section 7.5(q).

¶ 5    On September 20, 2010, the school sent McGehee a letter stating its belief that PAC's preauthorization denial was erroneous. The school also indicated that its "primary basis" for not disclosing the rebuttal letter was the section 7.5(q) exemption, based on the Personnel Record Review Act. The school noted that the newspaper had a right to have PAC review the school's denial under the section 7.5(q) exemption, and McGehee filed a request for such a review on September 23, 2010.

¶ 6    It appears from the record that PAC failed to advise the school of the newspaper's request for review. On September 29, 2010, PAC issued a letter denying the school's claimed exemption under section 7.5(q). According to PAC, the Personnel Record Review Act did not prohibit disclosure of the rebuttal letter. The school did not become aware of the newspaper's request for review or PAC's decision denying the second exemption until October 4, 2010. Prior to that, on September 29, 2010, the school agreed to have its attorney review and reconsider its initial denial of the newspaper's request for the rebuttal letter. On October 1, 2010, Josh Sharp of the Illinois Press Association sent a letter to the school based on the school's willingness to reconsider its denial. Sharp's letter explained why the exemption under section 7.5(q) was not applicable but it did not reference PAC's September 29, 2010, denial of that exemption.

¶ 7    On October 8, 2010, the school's attorney, Kathryn Vander Broek, issued a letter in response to Sharp's letter. Vander Broek indicated that the school had not received notice of the newspaper's request for review or PAC's decision until October 4, 2010. In any event, upon reconsideration, the school agreed that the section 7.5(q) exemption did not prevent disclosure of the rebuttal letter. Nevertheless, Vander Broek stated that the school was now claiming a new (third) exemption, under section 7(1)(n), which exempted records relating to a public body's adjudication of an employee grievance or a disciplinary case. See 5 ILCS 140/7(1)(n) (West 2010). Vander Broek further stated that although the parties had agreed to no particular time line for the school's reconsideration, assuming that the "standard five business day rule for response to an initial FOIA request" applied, the school had until the date of her letter, October 8, 2010, to provide its response and thereby claim this new exemption.

¶ 8    On October 21, 2010, PAC issued a letter to the newspaper (and the school) indicating that, while the school had previously relied on the exemption under section 7.5(q), it was now claiming a third exemption, under section 7(1)(n). PAC's letter indicated that it would consider whether that exemption was applicable. The newspaper did not wait for PAC's decision and filed a complaint against the school on November 3, 2010. Based on the pending suit, PAC issued a letter to the newspaper and the school on November 5, 2010,

indicating that its office would take no further action.

¶ 9      In its complaint, the newspaper argued that the school had forfeited its right to claim this third exemption or, alternatively, that the exemption did not apply. According to the newspaper, the school acted willfully, intentionally, and in bad faith in relying on a series of baseless exemptions, one after another, in an effort to avoid compliance with the FOIA.

¶ 10      On December 7, 2010, the school moved to dismiss as moot the newspaper's complaint. In its motion, the school stated that it had released the rebuttal letter on November 24, 2010, after PAC issued a verbal opinion that the rebuttal letter did not fall within the section 7(1)(n) exemption. The newspaper filed a response on December 20, 2010, requesting that the school's motion to dismiss be denied so that it could pursue its request for attorney fees and a civil penalty.

¶ 11      Shortly thereafter, on December 22, 2010, the newspaper petitioned for attorney fees and the imposition of a civil penalty under the FOIA. In its petition, the newspaper alleged that the school had refused to comply with its request for the rebuttal letter by attempting to invoke a series of exemptions under the FOIA. First, the school claimed that the exemption under section 7(1)(c) applied, but PAC disagreed and determined that the rebuttal letter should be released. Second, the school claimed that the exemption under section 7.5(q) applied, but PAC rejected that exemption as well. Third, the school claimed that the exemption under section 7(1)(n) applied. According to the newspaper, PAC advised the school in two written opinions that the first two exemptions were baseless, and it directed the school to release the rebuttal letter. Instead of complying with PAC's directive, however, the school referred to PAC's determination as "erroneous" and sought to invoke the third, inapplicable exemption. The school then released the rebuttal letter, along with a press release, at approximately 5 p.m. on November 24, 2010, which was the eve of the Thanksgiving holiday.

¶ 12      The accompanying press release stated that the school decided to make the letter public after being informed by its counsel that PAC had issued a "verbal opinion" that the rebuttal letter was not covered by the exemption under section 7(1)(n). According to the press release, former principal Hardy had "confirmed the authenticity of the letter to local news media," thus bringing it into "the public arena."

¶ 13      In its petition, the newspaper challenged the press release. The newspaper argued that the press release did not explain why the rebuttal letter was released based on PAC's purported oral opinion after the school had openly refused to comply with PAC's written opinions. In addition, in an attached affidavit of PAC employee Cara Smith, she denied that her office had issued any binding opinion or correspondence in this matter after the newspaper filed suit. In her affidavit, Smith averred that, in each piece of written correspondence, it was PAC's position that the school should release the rebuttal letter without further delay. Her affidavit also indicated that on November 21, 2010, counsel for the school had requested that PAC issue an oral opinion that the school could use as a basis to release the rebuttal letter. Smith declined to issue an oral opinion or any further written conclusions, however, because the newspaper had already filed suit, thus barring further action by PAC, and because PAC had already sent letters to the school rejecting its claimed exemptions.

¶ 14    The petition sought a civil penalty based on the school's willful and intentional failure to comply with the FOIA. In particular, the newspaper alleged that the school acted in bad faith by attempting to hide the contents of the rebuttal letter over a course of approximately three months, despite PAC's written instructions to release the rebuttal letter. The newspaper argued that the trial court should grant its request for attorney fees and a civil penalty because it obtained access to the rebuttal letter only as a result of filing suit.

¶ 15    The school filed a response disputing that the newspaper was entitled to attorney fees under the FOIA. It also moved for summary judgment. According to the school, the attorney fee provision of the FOIA had recently been amended to require a party to "prevail" in a proceeding, rather than "substantially prevail." The school argued that the newspaper did not "prevail," because the school voluntarily produced the rebuttal letter without a court order.

¶ 16    The newspaper responded that summary judgment was not appropriate, based on disputed issues of fact. It also argued that the catalyst theory, which holds that a party can recover attorney fees if the lawsuit prompts the other party to voluntarily change its conduct, still applied under the recently amended FOIA. The newspaper argued that it "prevailed," because the lawsuit caused the release of the rebuttal letter and thus no court-ordered relief was necessary.

¶ 17    On June 14, 2011, the trial court issued a memorandum opinion regarding the school's motion for summary judgment, specifically addressing whether the newspaper was entitled to attorney fees.[2] To begin with, the court noted that the authority supporting the newspaper's catalyst theory predated the January 1, 2010, amendment to the attorney-fee provision of the FOIA. Prior to the amendment, section 11(i) stated that "[i]f a person seeking the right to inspect or receive a copy of a public record *substantially prevails* in a proceeding under this Section, the court *may* award such person reasonable attorneys' fees and costs." (Emphases added.) 5 ILCS 140/11(i) (West 2008). Section 11(i) was then amended to read that "[i]f a person seeking the right to inspect or receive a copy of a public record *prevails* in a proceeding under this Section, the court *shall* award such person reasonable attorneys' fees and costs." (Emphases added.) 5 ILCS 140/11(i) (West 2010).

¶ 18    According to the court, the legislature had liberalized the FOIA by taking away the court's discretion to award attorney fees ("may award") and mandating that fees be awarded ("shall award"). Nevertheless, the legislature had also deleted the word "substantially" from the statute. While past case law made clear that the phrase "substantially prevails" was broad enough to encompass a plaintiff who had succeeded without court involvement (*i.e.*, the catalyst theory), the legislature was presumably aware of these cases and intended the deletion of the word "substantially" to effect a change in the law. The court reasoned that, because the newspaper had not achieved "judicially sanctioned relief," it had not prevailed in the instant action and thus was not entitled to attorney fees.

¶ 19    On August 16, 2011, the court issued a memorandum opinion addressing the newspaper's request that it impose a civil penalty against the school. Section 11(j) of the FOIA provides that if a "public body willfully and intentionally failed to comply with this Act, or otherwise

---

[2]The school's motion for summary judgment raised other issues not relevant to this appeal.

acted in bad faith, the court shall also impose upon the public body a civil penalty of not less [than] $2,500 nor more than $5,000 for each occurrence." 5 ILCS 140/11(j) (West 2010). In summarizing the series of events, the court found that a civil penalty was warranted, and it imposed a penalty of $2,500. The court reasoned as follows.

¶ 20 Subject to certain exceptions, the FOIA requires a public body to respond to a request for records within five business days. See 5 ILCS 140/3(d) (West 2010). If the request is denied, the public body must specify the reasons for the denial and any exemption claimed. 5 ILCS 140/9(a) (West 2010). In this case, the school relied on the exemption based on personal privacy under section 7(1)(c), and it was required to give written notice to PAC of its exercise of this exemption. 5 ILCS 140/9.5 (West 2010). The school complied with that initial requirement and also invoked the exemption under section 7.5(q), based on the Personnel Record Review Act. After learning from PAC that the section 7(1)(c) exemption was not properly invoked, the school no longer relied on that exemption but continued to rely on the section 7.5(q) exemption. The newspaper then requested PAC to review this claimed exemption under section 7.5(q), and PAC determined that, like the other exemption, it did not apply and thus did not prohibit disclosure. The court agreed with the school that it did not receive proper notice of the newspaper's request that PAC review the section 7.5(q) exemption. Nevertheless, the school had since conceded that this exemption was not "validly invoked here, so this procedural misstep [was] of no consequence in assessing the propriety" of the school's actions. The court's memorandum went on to say that as of October 8, 2010, the school had acted in accordance with the law but was simply incorrect about the two exemptions it had invoked. However, instead of releasing the rebuttal letter at this point, the school asserted a third exemption, under section 7(1)(n), which pertained to records of disciplinary matters.

¶ 21 According to the court, nothing in the FOIA suggested that a public body could continue to assert new bases for nondisclosure of a public record once its original position was found to be incorrect. "Indeed, the fact that the public body must respond to a request within five days (or an appropriate extended date) and state its *reasons* for withholding a document clearly indicates that additional bases for non-disclosure cannot be added afterwards." (Emphasis in original.) The court continued that perhaps "most troubling" was the school's contention that it had the right to articulate additional bases for nondisclosure in its October 8, 2010, letter. After the newspaper requested the school to reconsider its refusal to release the rebuttal letter, the school's October 8 response appeared to indicate that the newspaper's request somehow triggered a new response period under the FOIA, but the statute contained "no hint of any such provision." In other words, the school's "facially untenable" position was that "it might have been limited to the two exemptions originally claimed if [the newspaper] had *not* asked for reconsideration, but that the request to reconsider somehow opened the door to additional" exemptions. (Emphasis in original.)

¶ 22 The court continued that the "new exemption" claimed was, once again, inapplicable, as the school itself eventually conceded by releasing the rebuttal letter. The school's attempt to explain its change of heart as being the result of a supposed oral opinion from PAC was "resoundingly unconvincing." The record gave a "clear impression that the [school] understood that it was wrong on all three claimed exemptions, but was looking for a way to

save face rather than simply admitting it was wrong and disclosing the document." While the court would not penalize the school for erring in its legal judgment as to whether the rebuttal letter was protected from disclosure, the "entire course of events here strongly suggest[ed] that the [school] first decided that it would not release a document which it did not want to release, and only then did it begin looking for reasons to support a decision it had already made." The school's invocation of a new and equally unfounded basis for exemption after the first two exemptions were rejected was an indication of the school's "intransigence." It was only when the newspaper filed suit that the school was compelled to concede that its position was indefensible.

¶ 23  The court concluded that the "continued withholding" of the rebuttal letter after conceding that the original two claimed exemptions were incorrect constituted a willful and intentional violation of the FOIA. The school's course of conduct, viewed in its totality, reflected a lack of good faith in responding to the newspaper's request. Therefore, the court imposed a civil penalty of $2,500.

¶ 24  The newspaper timely appealed the court's grant of summary judgment in favor of the school on the issue of attorney fees, and the school timely cross-appealed the court's imposition of a civil penalty against it.

¶ 25                                II. ANALYSIS

¶ 26                              A. Attorney Fees

¶ 27  The newspaper first argues that the trial court erred by granting summary judgment in favor of the school on the issue of attorney fees. Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010). Our review of the trial court's grant of summary judgment is *de novo*. *Id.*

¶ 28  Under the "American Rule," parties typically pay their own attorney fees, and the winner is not entitled to collect those fees from the loser. *City of Elgin v. All Nations Worship Center*, 373 Ill. App. 3d 167, 169 (2007). Certain statutes, however, allow for an award of attorney fees to the prevailing party. *Id.* "The question, then, becomes what type of relief a party must receive in order to be deemed a prevailing party." *Id.*

¶ 29                   1. History of Attorney-Fee Provision

¶ 30  We begin with a brief history of the attorney-fee provision of the FOIA and the relevant case law. One of the first cases to address section 11(i) was *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193 (1997). At the time, section 11(i) provided that if a " 'person seeking the right to inspect or receive a copy of a public record *substantially prevails* in a proceeding under this Section, the court may award such person reasonable attorneys' fees and costs.' " (Emphasis in original.) *Id.* at 201 (quoting 5 ILCS 140/11(i) (West 1994)). As the *Stukel* court noted, the Illinois FOIA was analogous to the federal FOIA (5 U.S.C. §§ 552(a)(4)(E),

-7-

552a(g)(3)(B) (1994)), which allowed a plaintiff to recover fees if the plaintiff had "substantially prevailed" in the underlying action. *Id.* at 202. In interpreting the Illinois attorney-fee provision, the *Stukel* court noted that federal courts had generally held that, where the government agency voluntarily produced the requested records only after the plaintiff had filed suit, thereby mooting the suit, the plaintiff had substantially prevailed under the federal fee provision. *Id.* at 203. Agreeing with the logic of the federal decisions, the court in *Stukel* found that the plaintiffs had "substantially prevailed" where the defendants had released the records just two months after suit was filed. *Id.* at 202-03; see also *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 787 (1999) (holding that a court order compelling disclosure was not necessarily a prerequisite in order for the plaintiffs to "substantially prevail" under the FOIA; instead, the inquiry was whether the filing of suit was reasonably necessary to obtain the information).

¶ 31    Both *Stukel* and *Duncan* recognized, at least implicitly, the catalyst theory. See also *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 601 (2001) (explaining that the catalyst theory allows a plaintiff to recover attorney fees despite the fact that a court has not rendered a judgment in the plaintiff's favor if the litigation caused the defendant to change its position).

¶ 32    Two years later, in *Buckhannon*, the United States Supreme Court addressed the issue of whether the language "prevailing party," as found in the Fair Housing Amendments Act of 1988 (FHAA) (42 U.S.C. § 3601 *et seq.* (2000)) and the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 *et seq.* (2000)) included a party that had achieved a desired result through a voluntary change in the position of the opposing party, *i.e.*, the catalyst theory. In relation to the FHAA and ADA fee provisions, the Court rejected the catalyst theory, stating that it would impermissibly allow an award where there was not a judicially sanctioned change in the legal relationship of the parties. *Buckhannon*, 532 U.S. at 605. The Court therefore limited the definition of "prevailing party" to those plaintiffs who had achieved the desired outcome through either a judgment on the merits or a court-ordered consent decree. *Id.* at 604.

¶ 33    In response to the *Buckhannon* decision, Congress amended the federal FOIA in 2007 to ensure that plaintiffs who relied on the catalyst theory to obtain an award of attorney fees would not be subject to the *Buckhannon* proscription. See *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 615 (9th Cir. 2009). The federal FOIA was amended to state that "a complainant has *substantially prevailed* if the complainant has obtained relief through either–(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency." (Emphasis added.) 5 U.S.C. § 552(a)(4)(E)(ii)(I), (II) (Supp. 2007).

¶ 34    Three years later, in January 2010, the Illinois legislature amended the attorney-fee provision under the FOIA. Whereas the prior version stated that a court "may" award fees if the plaintiff "substantially prevails" (5 ILCS 140/11(i) (West 2008)), section 11(i) was amended to read that "[i]f a person seeking the right to inspect or receive a copy of a public record *prevails* in a proceeding under this Section, the court *shall* award such person reasonable attorneys' fees and costs" (emphases added) (5 ILCS 140/11(i) (West 2010)). In the amended version, the legislature thus deleted the word "substantially" and changed

"may" to "shall."

¶ 35                                    2. "Prevailing Party"

¶ 36       The issue in this case is whether the newspaper, which achieved the desired outcome (disclosure of the rebuttal letter) without a judgment on the merits, is a "prevailing party" under the current attorney fee provision of the FOIA. This question involves a matter of statutory interpretation, entitled to *de novo* review. See *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010) (the standard of review for issues of statutory construction is *de novo*). Our primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. *Id.* In determining the plain meaning of the statute, we consider the statute in its entirety, the subject it addresses, and the legislature's apparent intent in enacting it. *Id.* When the statutory language is clear and unambiguous, it must be applied as written, without resort to extrinsic aids of statutory construction. *Id.*

¶ 37       Another way to phrase the issue is what is the effect of the legislature's decision to change the language from "substantially prevail" to "prevail." The newspaper downplays this change by reiterating the intent of the FOIA. As to its public policy and legislative intent, the FOIA states that "it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees." 5 ILCS 140/1 (West 2010). It further states that it "is a fundamental obligation of government to operate openly and provide public Record as expediently and efficiently as possible in compliance with this Act." *Id.*; see also *Rockford Police Benevolent & Protective Ass'n v. Morrissey*, 398 Ill. App. 3d 145, 150 (2010) (under the FOIA, public records are presumed to be open and accessible; when a public body receives a proper request for information, it must comply with the request unless one of the section 7 exemptions applies). According to the newspaper, interpreting the amended FOIA to abandon the catalyst theory would run counter to the public policy behind the Act.

¶ 38       We disagree. As outlined above, courts applied the catalyst theory to the prior "substantially prevail" version of the FOIA. This judicial construction of the Act became a part of the law. See *People v. Villa*, 2011 IL 110777, ¶ 36 (the judicial construction of a statute becomes a part of the law, and the legislature is presumed to act with full knowledge of the prevailing case law and the judicial construction of the words in the prior enactment). Contrary to the newspaper's argument, the normal presumption is that an amendment is intended to change the law as it formerly existed, rather than to reaffirm it. *Board of Trustees of the University of Illinois v. Illinois Education Labor Relations Board*, 2012 IL App (4th) 110836, ¶ 32. When the legislature amends a statute by deleting certain language, it is presumed to have intended to change the law in that respect. *Id.*; see also *Williams v. Staples*, 208 Ill. 2d 480, 496 (2004) (every amendment to an unambiguous statute indicates a purpose to change the law). For this reason, the newspaper's reliance on cases interpreting the prior

-9-

version of the FOIA is misguided.

¶ 39 Moreover, although the former version of the Illinois FOIA was analogous to the federal FOIA, the legislature chose *not* to mirror the 2007 amendment to the federal FOIA when it amended the Illinois FOIA in 2010. The 2007 amendment to the federal FOIA explicitly adopted the catalyst theory by defining a party who has "substantially prevailed" as a party who has obtained relief through a voluntary or unilateral change in position by the withholding agency. The legislature did not adopt this language or even retain the "substantially prevail" language when amending the Illinois FOIA. Such a decision is significant, as one court explained:

"[W]hen the State legislature passes a State statute based upon a Federal statute, the statute can presumably be interpreted in conformity with the decisions of the Federal courts rendered prior to the adoption of the statute. Further, it may be presumed that the legislature adopted the language it did with knowledge of the construction previously enunciated in the Federal courts. [Citations.] However, the converse of these principles of statutory construction is also true. Since it may be presumed that the legislature had knowledge of the Federal courts' construction of the Federal statute, the intent of the State legislature can be derived not only from the language actually adopted, but also from the language which was changed or not adopted. The fact that the State legislature specifically declined to adopt a certain section of the model Federal statute evidences an intent to achieve a result different from that announced by the decisions of the Federal courts." *Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board*, 154 Ill. App. 3d 1045, 1050 (1987).

¶ 40 The word "substantial" means "consisting of," "relating to," and "sharing the nature of." Webster's Third New International Dictionary 2280 (1986). Black's Law Dictionary defines "prevail" as "[t]o obtain the relief sought in an action; to win a lawsuit." Black's Law Dictionary 1206 (7th ed. 1999); see *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 60 (when a statute contains undefined terms, a dictionary may be used to ascertain the plain and ordinary meanings of those terms). By deleting the word "substantially," which modified the verb "prevail," the legislature evinced an intent to require nothing less than court-ordered relief in order for a party to be entitled to attorney fees under the FOIA. Because the school released the rebuttal letter before the court ordered any relief in this case, the newspaper was not a "prevailing party" as contemplated by the FOIA.

¶ 41 As a final note, the newspaper's reliance on the legislative history of the 2010 amendment is misplaced. The statute is not ambiguous, meaning that it is not appropriate to consider such an extrinsic aid in interpreting it. See *Larson v. Wexford Health Sources, Inc.*, 2012 IL App (1st) 112065, ¶ 18 (only if a statute is ambiguous, if it is capable of being understood by reasonably well-informed persons in two or more different ways, will we consider extrinsic aids of construction in order to discern the legislative intent).

¶ 42 For all of these reasons, the newspaper was not a "prevailing party" entitled to attorney fees under the FOIA, and the trial court properly granted summary judgment in favor of the school in this regard.

¶ 43                                   B. Civil Penalty

¶ 44    In a cross-appeal, the school argues that the trial court erred by imposing against it a civil penalty of $2,500. The applicable section of the FOIA, section 11(j), provides:

> "If the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less [than] $2,500 nor more than $5,000 for each occurrence. In assessing the civil penalty, the court shall consider in aggravation or mitigation the budget of the public body and whether the public body has previously been assessed penalties for violations of this Act." 5 ILCS 140/11(j) (West 2010).

This provision was added as part of the 2010 amendment to the FOIA, and no case has yet addressed it.

¶ 45                                   1. Standard of Review

¶ 46    Before turning to the merits of this issue, the parties dispute the standard of review. The newspaper argues that an abuse-of-discretion standard of review is appropriate because the decision to impose a civil penalty is within the trial court's discretion. It cites *Szkoda v. Human Rights Comm'n*, 302 Ill. App. 3d 532, 546 (1998), for the general proposition that the assessment of a civil penalty is a discretionary matter and that a reviewing court will not disturb that determination absent an abuse of that discretion. Conversely, the school urges *de novo* review. The school argues that the facts are uncontroverted and that the trial court did not hear live testimony but decided the issue on the basis of written evidence alone. It cites *Jackson-Baker v. Immesoete*, 337 Ill. App. 3d 1090, 1093 (2003), which considered the trial court's ruling on a motion to add a respondent in discovery as a defendant. The reviewing court stated that, although such trial court decisions were usually entitled to deference, in that case *de novo* review was appropriate because the facts were undisputed; the credibility of the witnesses was not an issue; and in-court testimony had not been presented. *Id.*

¶ 47    In this case, the school is correct that there was no hearing or live testimony presented and that the court considered only the written evidence presented by the parties. However, we disagree with the school that the facts were not disputed. For example, the parties disputed why the school ultimately released the rebuttal letter. According to the school, it released the rebuttal letter because PAC issued a verbal opinion that its third claimed exemption was not applicable. Yet, in her affidavit, PAC employee Smith denied issuing any verbal opinion to that effect. Another disputed fact was the intent of the school's October 8, 2010, letter. In that letter, the school took the position that, once its counsel got involved and it agreed to reconsider the initial denial to disclose the rebuttal letter, negotiations resumed and somehow restarted the five-day clock for claiming exemptions under the FOIA. In response, the newspaper disputed the school's ability to claim an additional exemption after the first two were rejected, and it argued that the school had forfeited this right. Therefore, although the court considered only written evidence in making its decision, the facts were disputed. See *People v. Hall*, 195 Ill. 2d 1, 21 (2000) (even though the evidence considered

-11-

was written, the supreme court rejected the defendant's request for *de novo* review).[3]

¶ 48    To resolve these factual disputes regarding the school's actions in claiming a third exemption and eventually releasing the rebuttal letter, the trial court made factual and credibility determinations. As such, it is appropriate to review these findings under the manifest-weight-of-the-evidence standard. See *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 60 (a reviewing court should overturn a factual finding only if it is against the manifest weight of the evidence, which occurs when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence). Further, regardless of whether the underlying facts are disputed, we review the trial court's factual finding that the school willfully and intentionally failed to comply with the FOIA (and did not act in good faith) under the manifest-weight-of-the-evidence standard. See *Schroeder v. Winyard*, 375 Ill. App. 3d 358, 364 (2007) (whether a person acted willfully is typically a question of fact reserved for the trier of fact).

¶ 49    Once the trial court finds a willful and intentional failure to comply with the FOIA, or that the party acted in bad faith, it is required to, *i.e.*, "shall," impose a penalty. However, the amount of the penalty is within the trial court's discretion, so long as it is between $2,500 and $5,000 for each violation. Therefore, an abuse-of-discretion standard of review is appropriate for the amount of the penalty. In this case, the court imposed a minimum penalty of $2,500, and the newspaper does not contest this amount.

¶ 50                      2. Willful and Intentional Violation of the FOIA

¶ 51    In finding a violation of the FOIA, the trial court created a time line to assess the school's conduct. According to the court, the school's first two claimed exemptions, under sections 7(1)(c) and 7.5(q), were made in accordance with the FOIA. We note that the school is correct that it claimed both of these exemptions simultaneously and that PAC's first ruling found only that the section 7(1)(c) exemption did not apply. In other words, PAC did not rule on the applicability of the section 7.5(q) exemption until McGehee requested such a review. The school is also correct that it did not receive proper notice of PAC's review of the section 7.5(q) exemption. This is of no consequence, however, because the school later admitted that the section 7.5(q) exemption was not applicable. The trial court determined that, up until this point, the school's two claimed exemptions were made in accordance with the FOIA, and the school was simply mistaken as to whether these exemptions applied. It was the school's third

---

[3]Even if the facts were undisputed, we do not agree with the school's position that *de novo* review would be appropriate. The determination of the standard of review turns primarily upon the type of question or issue presented for review (*United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008)), and a trial court's imposition of a civil penalty is entitled to deference regardless of whether the facts are disputed. See *Toyal America, Inc. v. Illinois Pollution Control Board*, 2012 IL App (3d) 100585, ¶ 37 (noting that the Board has broad, discretionary power in imposing a civil penalty, and applying a dual standard by (1) reviewing factual findings under the manifest-weight-of-the-evidence standard and (2) setting aside the ultimate decision only if it is clearly arbitrary, capricious, or unreasonable).

exemption, raised for the first time on October 8, 2010, that caused the court concern.

¶ 52    After the school and the newspaper agreed that the school would reconsider its decision not to disclose the rebuttal letter, the school claimed a new, third exemption in its letter to the newspaper on October 8. The court found "most troubling" the school's position that, after its first two claimed exemptions fell through, it could continue to assert additional exemptions. The court found no support in the FOIA, and indeed the school cites none, for the position that it could continue to claim new exemptions. Although the school argued that the parties were still "negotiating" at the time of the October 8 letter, thereby entitling it to raise a third exemption, the newspaper disputed the school's ability to do so, as did the court. In a similar vein, the school attempts to distance itself from the first two claimed exemptions by arguing on appeal that they were made by a "nonlawyer" or "paralegal" who potentially did not have the latest version of the FOIA. This argument is easily rejected, as it hardly expands the five-day statutory window for claiming exemptions under the FOIA.

¶ 53    With respect to the school's argument that it did not willfully and intentionally fail to comply with the FOIA, because PAC had agreed to review the applicability of the third exemption, the school misses the point. It was not the fact that PAC had decided to review the applicability of the third exemption that troubled the court, it was the fact that the school thought it could raise a new (third) exemption after the first two had been rejected. Rather than wait for PAC's review of this newly claimed exemption, the newspaper filed suit on November 3, as was its prerogative. The school also argues that the "few weeks" between when the suit was filed and its decision to release the rebuttal letter was not an undue delay. Again, the school misses the mark by focusing on the wrong time frame and overlooking the date most important to the court. The critical date was October 8, when the school wrote the letter raising a third exemption under the guise of negotiations, rather than disclosing the rebuttal letter.

¶ 54    We note that the school's basis for releasing the rebuttal letter on November 24 also contributed to the court's "lack of good faith" finding. The court found the school's reliance on PAC's "oral opinion" that the third exemption did not apply to be "resoundingly unconvincing." Also, as stated, it contradicted the affidavit of Smith, who averred that she had declined the school's request that she issue an oral opinion that it could rely on as a basis for releasing the rebuttal letter. Not only did the school willfully and intentionally violate the FOIA by raising a third exemption after the first two were denied, it "looked for a way to save face" rather than simply admit that it was wrong. Therefore, the trial court's decision that the school willfully and intentionally violated the FOIA was not against the manifest weight of the evidence.

¶ 55                                    III. CONCLUSION

¶ 56    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County granting summary judgment in favor of the school on the issue of attorney fees and imposing a civil penalty of $2,500 against the school.

¶ 57    Affirmed.

-13-