NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190409-U

NOS. 4-19-0409, 4-19-0413 cons.

IN THE APPELLATE COURT

FILED
September 2, 2020
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| VINCENT CARTER, | ) | Appeal from the |
|      Petitioner-Appellant, | ) | Circuit Court of |
|      v. | ) | Sangamon County |
| JOHN BALDWIN, in His Official Capacity as Director of | ) | Nos. 18MR1008 |
| Corrections, | ) | 19MR64 |
|      Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's denial of petitioner's request for civil penalties was not
against the manifest weight of the evidence.

¶ 2        In December 2018, petitioner, Vincent Carter, filed *pro se* a complaint for

*mandamus* (735 ILCS 5/14-101 *et seq.* (West 2018)) against respondent, John Baldwin, in his

official capacity as Director of Corrections, in Sangamon County case No. 18-MR-1008

(hereinafter case No. 1008).  The court file also contains a petition for declaratory relief, but we

do not address it because petitioner does not even mention it in his brief.  Petitioner's *mandamus*

complaint sought injunctive and declaratory relief, punitive damages, and civil penalties under

section 11(j) of the Freedom of Information Act (FOIA) (5 ILCS 140/11(j) (West 2018)) for

respondent's failure to sufficiently respond to petitioner's FOIA request for the Board's

recommendation guidelines for sex offenders on mandatory supervised release (MSR).  In April

2019, respondent filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). After a May 2019 hearing, the Sangamon County circuit court granted respondent's motion to dismiss, dismissed the cause with prejudice, and found petitioner was not entitled to civil penalties.

¶ 3        In January 2019, petitioner filed *pro se* another complaint for *mandamus* against respondent in Sangamon County case No. 19-MR-64 (hereinafter case No. 64), again seeking injunctive and declaratory relief, punitive damages, and civil penalties under section 11(j). In this complaint, petitioner alleged respondent failed to sufficiently respond to his FOIA request seeking records related to the water contamination at the Dixon Correctional Center. In April 2019, respondent filed a section 2-619.1 motion to dismiss. After a May 2019 hearing, the circuit court granted respondent's motion to dismiss, dismissed the cause with prejudice, and found petitioner was not entitled to civil penalties.

¶ 4        Petitioner appeals *pro se* both judgments, asserting the circuit court erred by failing to award him mandatory civil penalties based on respondent's failure to comply with petitioner's FOIA requests. We affirm.

¶ 5                                I. BACKGROUND

¶ 6                                A. Case No. 1008

¶ 7        The following are the factual allegations in petitioner's December 2018 *mandamus* petition. Petitioner was an inmate in the Dixon Correctional Center. On September 19, 2018, petitioner submitted a FOIA request that stated the following: " 'A copy of "The [Board] Recommendation Guidelines for Sex Offenders that are MSR approved for release." ' " Two days later, the Department of Corrections (Department) responded with the following: " '[The Department] does not maintain or possess records responsive to your request.' "

Petitioner was not satisfied with the Department's response because Dana Thompson, a Department field service representative, stated Dixon Correctional Center field service representatives used the Board's guidelines. Petitioner attached Thompson's September 14, 2018, memorandum to his complaint. In the memorandum, Thompson noted " 'no computer/internet access' " was a standard recommendation for all sex offenders per the Board's recommendation guidelines provided to him by the Board. According to Thompson, the Board's recommendation guidelines told Thompson what he had to recommend, but the Board was the one who actually imposes it. Thompson had no choice in the matter.

¶ 8 On October 4, 2018, petitioner filed a request for review of the Department's response with the Attorney General's public access committee (PAC). The PAC responded on October 19, 2018. The response was based upon the materials petitioner submitted and pursuant to section 9.5(f) of FOIA (5 ILCS 140/9.5(f) (West 2018)), which permits the Attorney General to exercise discretion to resolve the request for review. Petitioner did not set forth the contents of PAC's response in his complaint.

¶ 9 On December 8, 2018, petitioner filed his *mandamus* complaint, which requested injunctive and declaratory relief in the form of compelling the Department to provide records responsive to petitioner's FOIA request, particularly, the document relied upon by Thompson, which contained the standard recommendations for all sex offenders. Petitioner also requested punitive damages and mandatory civil penalties because the Department willfully and intentionally failed to comply with FOIA or otherwise acted in bad faith.

¶ 10 In April 2019, respondent filed a section 2-619.1 motion to dismiss, asserting (1) respondent was not a proper party to this action, (2) the documents had already been provided to petitioner and thus his FOIA request was moot, and (3) petitioner's request for civil penalties

failed to state a claim. Respondent filed a memorandum in support of his motion to dismiss, to which he attached the following: (1) the affidavit of Lisa Weitekamp, the Department's FOIA officer; (2) petitioner's September 19, 2018, FOIA request; (3) e-mails by Department employees regarding petitioner's FOIA request; (4) the Department's September 21, 2018, response; (5) Thompson's memorandum; and (6) the Attorney General's April 5, 2019, letter providing petitioner with the guidelines mentioned by Thompson. In response, petitioner filed a motion for leave to amend his complaint, seeking to name the Department as the respondent instead of the Director of Corrections and add the Attorney General as a respondent. Petitioner admitted he had been provided with the documents he had originally sought. However, he contended the issue of whether the Department's failure to provide the requested documents was willful and intentional or otherwise in bad faith was not moot. Petitioner attached the following documents to his motion for leave to amend: (1) his September 13, 2018, letter to Thompson; (2) Thompson's memorandum; (3) petitioner's request for PAC review; and (4) PAC's response to petitioner's request, which found no further inquiry was warranted.

¶ 11 On May 28, 2019, the circuit court held a hearing on respondent's motion to dismiss. A report of proceedings for the hearing is not included in the record on appeal. On June 3, 2019, the court entered a written order granting respondent's motion to dismiss and dismissing the cause with prejudice. The court further found "[the Department] did not willfully and intentionally violate FOIA and as such, [petitioner] is not entitled to civil penalties."

¶ 12 On June 24, 2019, petitioner filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Thus, this court has jurisdiction of petitioner's appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). On appeal, this court docketed the appeal as case No. 4-19-0413.

¶ 13                                    B. Case No. 64

¶ 14          The following are the factual allegations in petitioner's January 2019 *mandamus* petition. On August 8, 2018, petitioner submitted a three-part request under FOIA, seeking records related to water contamination at the Dixon Correctional Center in January and February 2016. On August 16, 2018, petitioner received a response that denied two of the parts and stated, "[the Department] does not possess or maintain records responsive to this request." Petitioner was not satisfied with the Department's response because he knew other inmates had received some documents that the Department was claiming it did not possess or maintain.

¶ 15          On August 21, 2018, petitioner sought review of the Department's denial of his request with the PAC. The PAC responded on September 5, 2018. The response was based upon the materials he submitted and pursuant to section 9.5(f) of FOIA (5 ILCS 140/9.5(f) (West 2018)), which permits the Attorney General to exercise discretion to resolve the request for review. The PAC determined no further inquiry was warranted and closed the case.

¶ 16          In his January 2019 *mandamus* complaint, petitioner requested injunctive and declaratory relief in the form of compelling the Department to provide records responsive to petitioner's FOIA request. Petitioner also requested punitive damages and mandatory civil penalties because the Department willfully and intentionally failed to comply with FOIA or otherwise acted in bad faith.

¶ 17          In April 2019, respondent filed a section 2-619.1 motion to dismiss, asserting (1) respondent was not a proper party to this action, (2) the Department did not possess records responsive to petitioner's request, (3) petitioner's request for test results and notices was moot, and (4) petitioner's request for civil penalties failed to state a claim. In his memorandum in support of his motion to dismiss, respondent attached the following: (1) the affidavit of Joel

Diers, a Department attorney who assisted with reviewing and fulfilling FOIA requests; (2) petitioner's August 8, 2018, FOIA request; (3) a January 10, 2016, incident report about a complaint of rusty water by Dennis McCoy; (4) a January 10, 2016, incident report about a complaint of yellow water by Dennis Nauman; (5) e-mails between Department employees about the water softener issue; (6) PDC Laboratories, Inc. analytical results on water samples from the Dixon Correctional Center in March 2016; (7) documents showing the flushing of faucets in January 2016; (8) a January 2016 coliform analysis report on the water at the Dixon Correctional Center by the Illinois Environmental Protection Agency; and (9) the Department's August 16, 2018, response to petitioner's FOIA request. In response, petitioner filed a motion for leave to amend his complaint, seeking to name the Department as the respondent instead of the Director of Corrections. Petitioner admitted he had been provided with the documents he had originally sought. However, he contended the issue of whether the Department's failure to provide the requested documents was willful and intentional or otherwise in bad faith was not moot. He also contended the documents attached to the motion to dismiss show the Department acted in bad faith when it claimed the water at the Dixon Correctional Center was not tested in January and February 2016.

¶ 18 On May 28, 2019, the circuit court held a hearing on respondent's motion to dismiss. A report of proceedings for the hearing is not included in the record on appeal. On June 3, 2019, the court entered a written order dismissing petitioner's complaint with prejudice. The court further found "[the Department] did not willfully and intentionally violate FOIA and as such, [petitioner] is not entitled to civil penalties."

¶ 19 On June 24, 2019, petitioner filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Thus, this court has

jurisdiction of petitioner's appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). On appeal, this court docketed the appeal as case No. 4-19-0409. In January 2020, respondent filed a motion to consolidate the appeals in these two cases, which this court granted on February 4, 2020.

¶ 20                                    II. ANALYSIS

¶ 21          In this case, the circuit court denied both of petitioner's requests for civil penalties under section 11(j) of FOIA (5 ILCS 140/11(j) (West 2018)) and dismissed the *mandamus* complaints with prejudice. On appeal, petitioner only challenges the court's denial of his requests for civil penalties under section 11(j) which provides, in pertinent part, the following:

> "If the court determines that a public body willfully and intentionally failed to
>
> comply with this Act, or otherwise acted in bad faith, the court shall also impose
>
> upon the public body a civil penalty of not less than $2,500 nor more than $5,000
>
> for each occurrence." 5 ILCS 140/11(j) (West 2018).

In both cases, the circuit court implicitly found respondent did not willfully and intentionally fail to comply with FOIA or act in bad faith when it found petitioner was not entitled to civil penalties.

¶ 22          Here, we lack a report of proceedings for the dispositive hearing in both cases. As the appellant, petitioner "ha[d] the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. Based on the record before us, the circuit court considered only written pleadings and attachments in denying petitioner's request for civil penalties. In making its determination, the court still had to

resolve factual disputes and make credibility determinations regarding the Department's actions. As such, we apply the same standard of review as in *Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879, ¶ 48, 977 N.E.2d 1216, where the Appellate Court, Second District, reviewed the circuit court's factual determination the respondent did not willfully and intentionally fail to comply with FOIA or act in bad faith under the manifest weight of the evidence standard of review. With that standard, a reviewing court will only overturn a factual finding when the opposite conclusion is apparent or when the finding appears to be unreasonable, arbitrary, or not based on the evidence. *Rock River Times*, 2012 IL App (2d) 110879, ¶ 48.

¶ 23 Section 11 of FOIA provides, in pertinent part, as follows:

"(a) Any person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief.

(a-5) In accordance with Section 11.6 of this Act, a requester may file an action to enforce a binding opinion issued under Section 9.5 of this Act." 5 ILCS 140/11 (West 2018).

With both of petitioner's FOIA requests, the PAC determined no further inquiry was warranted and closed the case. A binding opinion was not issued. "The decision not to issue a binding opinion shall not be reviewable." 5 ILCS 140/9.5(f) (West 2018). Thus, petitioner cannot challenge the PAC's decisions not to issue a binding opinion by claiming a conflict of interest within the Attorney General's office.

¶ 24 With case No. 1008, petitioner argues the circuit court's finding the Department did not willfully and intentionally fail to comply with FOIA or act in bad faith was erroneous because the requested document clearly existed when he made his request. Thus, he asserts the

Department's search of its records was unreasonable. Respondent contends the search was reasonable. We agree with respondent.

¶ 25        In her affidavit, Weitekamp explained she sent petitioner's FOIA request to Alyssa Schafer-Williams, the manager of the Department's sex offender services unit, because petitioner requested documentation regarding the guidelines for sex offenders who were approved for MSR and she believed the sex offender services unit would possess the requested information. Weitekamp presumed Schafer-Williams, as the manager of the sex offender services unit, would have knowledge regarding the policies, procedures, and documents the Department possessed on this topic. Weitekamp stated Schafer-Williams replied, noting nothing like the requested document existed. A copy of Weitekamp and Shafer-Williams's e-mail exchange is attached to Weitekamp's affidavit. Given Shafer-Williams's response, Weitekamp responded to petitioner's FOIA request in a letter stating the Department does not maintain or possess records responsive to his request. We note petitioner did not mention Thompson or attach Thompson's memorandum to his September 2018 FOIA request. Weitekamp did not receive any communication from petitioner after her letter. The record also does not contain anything indicating the PAC required information from the Department during its review of the Department's response to petitioner's FOIA request. Thus, no evidence showed the Department did not comply with the PAC. In his December 2018 *mandamus* complaint, petitioner mentioned Thompson and attached his memorandum. Thereafter, Thompson was contacted and the responsive document, which was a memorandum on the Board's recommendation guidelines, was located. The document was provided to petitioner in April 2019. The aforementioned facts show a reasonable search on the part of the Department given the information it had before it. When additional information was obtained from petitioner, the responsive document was located

and provided to petitioner, which negates a claim of bad faith.  The facts also do not show an intentional and willful violation of FOIA.

¶ 26     Regarding case No. 64, petitioner asserts the Department acted in bad faith by stating it did not maintain or possess records related to water testing in January and February 2016 because it is refuted by the records submitted by respondent with his motion to dismiss. Petitioner again asserts the Department did not conduct a reasonable search.  Respondent argues the search was reasonable and, if a violation occurred, its actions were not in bad faith or an intentional and willful violation of FOIA.

¶ 27     In his August 2018 FOIA request, petitioner sought the following three things:

> "(1) the toxic; lead and matellic [*sic*] particle levels found in Dixon C.C. water source during January 2016 & February 2016.
>
> (2) the cause for the constant influx of amber colored fiber particles that ran through the Dixon C.C. water system during January & February 2016.
>
> (3) a copy of any NOTICES issued to the inmates or staff (by way of memo, text, e-mail, etc.) at Dixon C.C. regarding contaminated water in 2016."  (Emphasis in original.)

In response to the three-part request, the Department stated it did not possess or maintain records responsive to petitioner's first and third requests.  As to the second request, the Department provided petitioner with a copy of an e-mail detailing the problems observed with the softening units at the Dixon Correctional Center.

¶ 28     In his affidavit, Diers explained he had received previously a FOIA request similar to petitioner's and had contacted the Department's chief engineer.  The chief engineer had given him numerous documents.  Those documents were attached to Dier's affidavit.  As to

- 10 -

the first request, Diers explained he answered the Department did not possess or maintain records responsive to the request because the water was not tested in January or February 2016. We note the water tests in January 2016 referred to by petitioner in his brief were testing for coliform bacteria and not for the toxic lead and metallic particle levels. Thus, those documents were not responsive to petitioner's first request. The Department did respond to the second request by providing an e-mail detailing the problems observed with the softening units. Regarding the third request, Diers noted no notices were issued to staff or inmates. Diers further stated two incident reports were filed out related to the water contamination but he did not believe they were responsive to petitioner's request. Thus, he responded the Department did not possess or maintain records responsive to the third request. The incident reports were also attached to Dier's affidavit. The record does not contain anything indicating the PAC required any information from the Department during its review of the Department's response to petitioner's FOIA request. Thus, no evidence showed the Department did not comply with the PAC. The Department then provided the documents it received from the chief engineer regarding a similar FOIA request with its motion to dismiss petitioner's *mandamus* complaint. In his motion to amend, petitioner acknowledged he had received all the documents he originally sought. The above facts demonstrate a reasonable search on the part of the Department given the specificity of petitioner's request. The Department provided petitioner with a broader array of documents regarding the water contamination than he requested in his August 2018 FOIA request, which negates a claim of bad faith. The facts also do not show an intentional and willful violation of FOIA by the Department.

¶ 29    Based on the facts before the circuit court, we do not find the court's implicit rulings the Department did not willfully and intentionally fail to comply with FOIA or otherwise

act in bad faith were against the manifest weight of the evidence.

¶ 30                                    III. CONCLUSION

¶ 31            For the reasons stated, we affirm the Sangamon County circuit court's judgments.

¶ 32            Affirmed.