NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190347-U

NO. 4-19-0347

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 28, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| VINCENT BOGGAN, | ) | Appeal from the |
| Petitioner-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| FOIA OFFICE OF THE DEPARTMENT OF | ) | No. 17MR1020 |
| CORRECTIONS, | ) | |
| Respondent-Appellee. | ) | Honorable |
| | ) | Jack D. Davis II, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's denial of petitioner's request for civil penalties was not
against the manifest weight of the evidence.

¶ 2    In November 2017, petitioner, Vincent Boggan, filed *pro se* a complaint for

*mandamus* (735 ILCS 5/14-101 *et seq.* (West 2016)) against respondent, the FOIA Office of the

Department of Corrections (Department). In his *mandamus* petition, petitioner sought civil

penalties under section 11(j) of the Freedom of Information Act (FOIA) (5 ILCS 140/11(j) (West

2016)). Petitioner later filed an amended *mandamus* petition, naming the Director of Corrections

as respondent. In April 2018, respondent filed a motion to dismiss petitioner's amended

complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)).

After an August 2018 hearing, the Sangamon County circuit court ordered the Department to

conduct a records search and provide any additional response to petitioner but denied petitioner's

additional requests for relief.  Respondent filed a notice of compliance with the court's August 2018 order, and petitioner filed a motion for modification of the order, requesting the court order respondent to pay petitioner a mandatory civil penalty.  After a May 2019 hearing, the court denied petitioner's motion for modification and dismissed petitioner's complaint with prejudice.

¶ 3        Petitioner appeals *pro se*, asserting the circuit court erred by failing to award him the mandatory civil penalty.  We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        The following are the factual allegations in petitioner's *mandamus* petition and/or facts set forth in a March 6, 2017, letter by the Attorney General's Public Access Bureau (Bureau).  Petitioner is an inmate in the Dixon Correctional Center.  On January 13, 2016, petitioner filed a four-part request under FOIA, seeking records related to " 'the cause for [an] influx of corrosive dirty looking and smelling water running through Dixon C.C. taps during the month of January, 2016, and the constant influx of amber colored fiber like particles that continue[d] to clog the tap regulators ***.' "  On January 27, 2016, petitioner received a response stating, " '[the Department] does not possess or maintain records responsive to these requests."  In February 2016, petitioner sought review with the Bureau of the Department's denial of his request.  With his request, petitioner included a grievance he filed with the Dixon Correctional Center regarding the facility's water quality.  In his grievance, petitioner stated the following:

> " 'I informed the Maintenance Man that I noticed the water getting
>
> progressively worse over the past 3½ weeks ***.  At that time the Maintenance
>
> Man confirmed that the Maintenance Department was aware of the contaminance
>
> [*sic*] in the water system, by stating that: "a few weeks ago some kind of Water

Softener/Filtration System exploded, and caused large quantities of the gritty substance to enter the water system." ' "

¶ 6       On February 29, 2016, the Bureau asked the Department's FOIA officer to " 'describe [the Department]'s search for the requested records, including where and how the records are maintained, and who performed the search.' " That same day, the FOIA officer responded she had asked the FOIA liaison at the Dixon Correctional Center who had in turn asked the chief engineer and the chief engineer stated no records " 'showed the specific information that [petitioner] requested.' " In April 2016, the Bureau sent a copy of petitioner's request for review to the Department and again asked for a detailed description of its search for responsive records. The Bureau also asked the Department "to clarify if it 'possess[ed] any records regarding any issues with the water quality at the Dixon Correctional Center for the timeframe requested by [petitioner].' " In May 2016, the Department responded as follows:

> "I can now confirm that [the Department] does not possess or maintain records responsive to any portion of the request.
>
> Upon receipt of the request from·[petitioner], the [Department's] Freedom of Information Office contacted the Chief Engineer who maintains water reports for the facility, who confirmed that [the Department] does not possess or maintain records which respond to [petitioner]'s request.
>
> The above is a summary of the steps taken to locate responsive records. It is not intended to depict the full search that was under take [*sic*] for these records. The Department has taken reasonable steps to ensure that these records do not exist."

¶ 7       In March 2017, the Bureau made a determination under section 9.5(f) of FOIA (5

ILCS 140/9.5(f) (West 2016)), concluding the response by the Department to petitioner's January 13, 2016, request violated the requirements of FOIA. The Bureau stated, in pertinent part, the following:

"Here, [petitioner]'s request can reasonably be construed to seek records concerning the source and quality of water at the Dixon Correctional Center. [The Department]'s boilerplate assertion that it took reasonable efforts to locate records responsive to this request is conclusory. Despite this office's unambiguous requests for a description of the specific systems that were searched, a detailed description of the search of those systems, and to clarify whether [the Department] maintained or possessed *any* records regarding issues with the quality of water at the Dixon Correctional Center, [the Department]'s response to this office merely stated that [the Department]'s FOIA Office contacted the chief engineer at Dixon Correctional Center, and that the chief engineer simply stated there were no responsive records.

[The Department] neither described how it maintains records about environmental conditions such as the water quality within this prison nor the specific measures that the chief engineer took to search for those records. Although the chief engineer would likely be aware of concerns about water quality, it is not clear that the chief engineer is the only [Department] employee who would generate records or engage in communications about water quality. Based on the available information, it appears possible, if not likely, that [the Department] possesses additional records concerning the water conditions at the Dixon Correctional Center, such as the age and grade of the current water

source/infrastructure at the prison, inspection-records, maintenance records, and/or inmate complaint records. Because [the Department] did not provide this office with a sufficient explanation of how it searched for records responsive to [petitioner]'s request, the [Bureau] is unable to conclude that [the Department] performed a reasonable search for responsive records. To remedy this violation, this office asks [the Department] to conduct a search of the applicable recordkeeping systems and issue a supplemental response to [petitioner] that fully complies with section 9 of FOIA (5 ILCS 140/9 (West 2014))." (Emphasis in original.)

The Bureau's letter also noted the resolution of the matter did not require the issuance of a binding opinion.

¶ 8        In his November 2017 *mandamus* petition, petitioner alleged he had still not received a response from the Department to the Bureau's March 2017 letter. Based on the aforementioned facts, petitioner argued the Department had willfully and intentionally failed to comply with his FOIA request on no less than three different occasions or had otherwise acted in bad faith in violation of section 11(j) of FOIA, which mandated the court to impose a civil penalty on the Department of not less than $2,500 nor more than $5,000 for each of the three occurrences. Petitioner also sought injunctive relief requiring the Department to provide the records in response to his request. Additionally, petitioner sought punitive damages for the Department's refusal to provide any information on the contaminated water he was forced to drink and bathe in during January and February 2016. In March 2018, petitioner filed an amended complaint, listing John Baldwin, Director of Corrections, as the respondent and raising the same allegations.

¶ 9        In April 2018, respondent filed a section 2-615 motion to dismiss petitioner's first amended complaint, contending petitioner failed to plead sufficient facts giving rise to a cause of action. Respondent alleged petitioner had access to the materials he seeks because petitioner noted they were in the Dixon Correctional Center's law library. It also argued FOIA did not require a public body to create records and stated the chief engineer confirmed the Department did not have the records responsive to petitioner's request. Petitioner filed a reply, noting the Dixon Correctional Center's law library did not have the annual reports or notice for the period of January to March 2016. Petitioner also noted he expected documents existed regarding the problems the Dixon Correctional Center was having with the water system during the period of January to March 2016.

¶ 10       On August 6, 2018, the circuit court held a telephone hearing regarding respondent's motion to dismiss. The next day, the court entered an order adopting the Bureau's determination as to only parts one through three of petitioner's January 2016 request and ordering the Department to conduct a records search and provide additional responses to petitioner regarding such search and any responsive records. The court denied petitioner's requests for additional relief.

¶ 11       On August 21, 2018, respondent filed a notice of compliance with the circuit court's August 7, 2018, order. Attached to the notice was the Department's amended response to petitioner's January 2016 FOIA request and 11 pages of documents. Eight days later, petitioner filed a motion for modification of the August 2018 order, contending the court erred by not awarding petitioner the civil penalty under section 11(j) of FOIA (5 ILCS 140/11(j) (West 2016)) because it is mandatory when the court finds a willful and intentional failure to comply with FOIA or the party acted in bad faith. Respondent filed a response asserting petitioner's motion

should be denied and noting it had complied with the court's order. Petitioner filed a reply disagreeing respondent had complied with the court's order because the Department did not provide copies of any notices sent to inmates or staff regarding the contaminated water (part three of petitioner's January 2016 request). On May 10, 2019, the circuit court held a telephone hearing on petitioner's motion for modification. Six days later, the court denied petitioner's motion.

¶ 12 On June 4, 2019, petitioner filed a timely notice of appeal from the dismissal with prejudice of his petition for *mandamus* in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). Thus, this court has jurisdiction of petitioner's appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 13        II. ANALYSIS

¶ 14 In this case, the circuit court granted petitioner declaratory relief and denied his request for civil penalties under section 11(j) of FOIA (5 ILCS 140/11(j) (West 2016)) before it ultimately dismissed his *mandamus* complaint as moot. Contrary to petitioner's assertion, we note the circuit court did not find petitioner's claim for civil penalties was moot. On appeal, petitioner only challenges the court's denial of his request for civil penalties under section 11(j) which provides, in pertinent part, the following:

> "If the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence." 5 ILCS 140/11(j) (West 2016).

¶ 15 While the circuit court considered only written pleadings and attachments in denying petitioner's request for civil penalties, the court had to resolve factual disputes regarding

the Department's actions. As such, we apply the same standard of review as in *Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879, ¶ 48, 977 N.E.2d 1216, where the Appellate Court, Second District, reviewed the circuit court's factual determination the respondent did not willfully and intentionally fail to comply with FOIA or act in bad faith under the manifest weight of the evidence standard of review. With that standard, a reviewing court will only overturn a factual finding when the opposite conclusion is apparent or when the finding appears to be unreasonable, arbitrary, or not based on the evidence. *Rock River Times*, 2012 IL App (2d) 110879, ¶ 48.

¶ 16        Section 11 of FOIA provides, in pertinent part, as follows:

"(a) Any person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief.

(a-5) In accordance with Section 11.6 of this Act, a requester may file an action to enforce a binding opinion issued under Section 9.5 of this Act." 5 ILCS 140/11 (West 2016).

Here, the Bureau's March 2017 letter expressly found the matter did not require the issuance of a binding opinion. "The decision not to issue a binding opinion shall not be reviewable." 5 ILCS 140/9.5(f) (West 2016). Thus, petitioner cannot challenge the Bureau's decision not to issue a binding opinion. Also, since the Bureau did not issue a binding opinion, section 11.6 of FOIA (5 ILCS 140/11.6 (West 2016)), which contains a rebuttable presumption the public body willfully and intentionally failed to comply with FOIA, does not apply in this case. Additionally, petitioner fails to cite any authority in support of his contention the Department's failure to comply with the Bureau's letter should be considered a rebuttable presumption that the Department willfully and intentionally failed to comply with FOIA.

¶ 17        Moreover, in reviewing the circuit court's determination, we will not consider the exhibits attached to petitioner's notice of appeal and any arguments based on those documents. While petitioner asserts he presented them to the circuit court at the May 2019 hearing, the record on appeal lacks a report of proceedings for that hearing, and the record contains no other evidence showing those documents were in fact presented to the circuit court. As the appellant, petitioner "ha[d] the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959.

Additionally, we point out the civil penalties provided in section 11(j) are mandatory only '[i]f the court determines that a public body willfully and intentionally failed to comply with [FOIA], or otherwise acted in bad faith." 5 ILCS 140/11(j) (West 2016). Here, the circuit court implicitly found respondent did not willfully and intentionally fail to comply with FOIA or act in bad faith when it denied petitioner's request for additional relief in its August 2018 order. Further, contrary to petitioner's assertion, the record does not show the circuit court denied petitioner's motion for modification based on respondent's compliance with the court's August 2018 order. They were two separate issues the circuit court addressed at the May 2019 hearing.

¶ 18        Petitioner contends the Bureau's March 2017 letter clearly indicates respondent acted in bad faith and willfully and intentionally failed to comply with FOIA. However, in its letter, the Bureau found the Department did not sufficiently explain how it searched for records and thus the Bureau could not determine if the Department conducted a reasonable search for responsive records. Additionally, the materials the Department did produce in August 2018 were

created after January 2016 and would not have been available at the time of petitioner's initial request.  Moreover, the Department did reply each time the Bureau asked it to do so, except for after the March 2017 letter.  However, at that point, the Department had given essentially the same answer three times.  The Bureau's letter indicated a concern with the narrowness of the Department's search for responsive documents and not an utter disregard of petitioner's four-part FOIA request.  Based on the facts before the circuit court, we do not find the court's implicit ruling the Department did not willfully and intentionally fail to comply with FOIA or otherwise act in bad faith was against the manifest weight of the evidence.

¶ 19                                    III. CONCLUSION

¶ 20            For the reasons stated, we affirm the Sangamon County circuit court's judgment.

¶ 21            Affirmed.