NOTICE
Decision filed 11/25/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190016-U

NO. 5-19-0016

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| SCOTT D. PEERY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 16-CH-684 |
| | ) | |
| MADISON COUNTY STATE'S ATTORNEY'S OFFICE, | ) | |
| | ) | Honorable |
| | ) | Clarence W. Harrison II, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge, presiding. |

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Because the evidence revealed no willful or intentional failure by the public body to comply with the Illinois Freedom of Information Act, the court improperly imposed a civil penalty against the public body.

¶ 2    The plaintiff, Scott D. Peery, requested documents from the defendant, the Madison County State's Attorney's Office, pursuant to the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)) on four occasions between March 2016 and September 2016. In response, the defendant granted the requests in part, denied the requests in part, and provided redacted portions of documents. The plaintiff thereafter filed suit against the defendant, requesting injunctive and declaratory relief regarding the four requests. Following an evidentiary hearing, the circuit court entered judgment, finding all required documents had been produced to

1

the plaintiff, but awarding the plaintiff civil penalties of $2500 and court costs of $227 on the basis of his March 4, 2016, request for documents. Both the plaintiff and the defendant appeal the circuit court's judgment.

¶ 3    On appeal, the plaintiff contends that he is entitled to relief from the circuit court's decision because the circuit court misapplied the law regarding the FOIA, failed to require a proper index of redacted and withheld documents, failed to require production of documents responsive to his requests and not found to be exempt, and issued a fine not supported by statute. The defendant cross-appeals, arguing that the circuit court erred in awarding the plaintiff civil penalties when the evidence did not support a finding of a willful, intentional, or bad faith violation of the FOIA. For the following reasons, we hereby affirm in part and reverse in part the circuit court's judgment.

¶ 4                                  I. BACKGROUND

¶ 5                            A. Plaintiff's FOIA Requests

¶ 6    On March 4, 2016, the plaintiff submitted a FOIA request to the defendant seeking "all internal and external communications of the [defendant] in the matter of People v. Scott Peery in both 14[-]TR[-]200094 and 15[-]CM[-]1539[,] [including] all written and verbal communications conducted at government offices or on government equipment *** from 9-25-14 to present day." In People v. Peery, case number 14-TR-200094, the defendant, on June 12, 2014, entered a plea of no contest to the ticketed charge of failure to reduce speed, which resulted from his striking and killing a pedestrian with his pickup truck in September 2013. *People v. Peery*, 2019 IL App (5th) 160255-U, ¶ 2. However, on June 30, 2014, by agreement of the parties, the defendant's conviction was vacated, the failure-to-reduce-speed charge was

2

amended to a charge of reckless conduct not involving a motor vehicle, and the defendant entered a plea of *nolo contendere* to the amended charge. *Id.* ¶¶ 5-6.[1]

¶ 7 Pursuant to a July 19, 2016, letter to the Public Access Counselor (the PAC) of the Office of the Attorney General of Illinois, the defendant asserted that after the plaintiff had pled guilty to the reckless conduct charge in 2014, the victim's sisters learned of the modification and prompted the defendant's First Assistant to send a letter to the Secretary of State notifying it of the factual background behind the defendant's conviction, and the Secretary of State exercised its discretion and suspended or revoked the plaintiff's driver's license. In the July 19, 2016, letter to the PAC, the defendant asserted that the plaintiff thereafter began a pattern of harassment of the defendant, including numerous office visits, persistent harassing telephone calls, and an uninvited visit to the home of the First Assistant, all of which resulted in a 2015 charge of telephone harassment against the plaintiff in case number 2015-CM-1539, for which the plaintiff also sought documents pursuant to his March 4, 2016, request.

¶ 8 On March 17, 2016, after invoking the statutory provision for an extension to respond to the request, the defendant provided 50 documents free of charge, requested a fee for an additional 70 pages of responsive documents, and denied the plaintiff's request in part. The defendant asserted that many of the requested documents were exempt from inspection and copying. Specifically, the defendant asserted the following exemptions: an exemption pursuant to section 7(1)(a) of the FOIA (5 ILCS 140/7(1)(a) (West 2016)), involving information prohibited from disclosure by federal or state rules or regulations, on the basis that the

---

[1]In 2015, the plaintiff's reckless conduct conviction was vacated, and in March 2016, he was thereafter found guilty of failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2012)). However, this court subsequently vacated that conviction and sentence and remanded the cause for a new trial. *Peery*, 2019 IL App (5th) 160255-U.

3

prosecutor's files are privileged; an exemption pursuant to section 7(1)(b) of the FOIA (*id.* § 7(1)(b)), involving private information redacted from the records provided; an exemption pursuant to section 7(1)(c) of the FOIA (*id.* § 7(1)(c)), involving personal information contained within public records, on the basis that "all records of communication between [the defendant] and the family of *** the woman that [the plaintiff] killed, in cause 14[-]TR[-]200094 [were exempt because] their privacy interests outweigh[ed] [the plaintiff's] interest *** in viewing these communications"; and an exemption pursuant to section 7(1)(n) of the FOIA (*id.* § 7(1)(n)) on the basis that any communications between the defendant and its staff discussing legal strategy or the merits of cases were exempt from inspection and copying. The defendant informed the plaintiff of his right to appeal the decision to the PAC or to seek judicial review.

¶ 9       Accordingly, on May 10, 2016, the plaintiff submitted a request for the PAC to review his March 4, 2016, request. The plaintiff disagreed with the defendant's 7(1)(c) exemption involving an invasion of privacy. The plaintiff argued that any communication with the defendant with regard to the plaintiff's driver's license was not an invasion of privacy for the victim's family members. The plaintiff also disagreed with the defendant's assertion of an exemption pursuant to section 7(1)(n), involving communications between a public body and an attorney representing the public body due to attorney-client privilege and attorney work product. The plaintiff asserted that the defendant's First Assistant included false information in letters to the Secretary of State. The plaintiff asserted that "[a]ny communication internal or external to this should not have occurred and cannot be shielded by attorney client or attorney work product."

¶ 10      On May 24, 2016, the PAC notified the defendant that further action on the plaintiff's request was warranted. The PAC requested the defendant to furnish copies of the withheld

4

records for confidential review, as well as a detailed explanation of the factual and legal bases for the asserted section 7 exemptions.

¶ 11 On July 6, 2016, the defendant, via John McGuire, sent a letter to the plaintiff stating that some of the documents had been omitted because they were no longer in the defendant's possession. The defendant explained that in June 2015, a special state's attorney was appointed in the plaintiff's traffic case, and thus, the defendant had sent the file to the special state's attorney. The defendant asserted that an August 2014, letter, sent to the Secretary of State by the defendant's First Assistant, along with supporting documents, were in that file.

¶ 12 In his response, the plaintiff clarified that he sought "all internal and external communications of the [defendant] in the matter of People v. Scott Peery in both TR[-]14200094 and 15[-]CM[-]1539 *** to include all written and verbal communications conducted at government offices or on government equipment *** from 9-25-13 to present day." The plaintiff asserted that in the 120 pages that the defendant had provided him, a copy of the August 2014 letter from the defendant's First Assistant had been included without the supporting documentation.

¶ 13 In the previously referenced July 19, 2016, letter to the PAC, the defendant explained that after the plaintiff was charged with telephone harassment of the defendant in 2015, the defendant had filed a motion seeking the appointment of a special state's attorney in both 14-TR-200094 and 15-CM-1539, and both case files were sent to the Illinois State's Attorneys Appellate Prosecutor's Office. The defendant, believing that an August 2014 packet of documentation sent to the Secretary of State, had been sent to the special state's attorney, thereafter retrieved the files from the special state's attorney, and the packet remained missing. The defendant explained that it had made an effort to reconstruct this packet of documents for the plaintiff. The defendant

5

further explained that it did not claim exemption with regard to the letter and supporting documentation sent to the Secretary of State in August 2014 but asserted an inability to locate the packet of documents within its office.

¶ 14    The defendant submitted to the PAC the remaining withheld documents and the supplied documents, separated into five individual packets. The defendant asserted that the records denied to the plaintiff included e-mails where all parties were the defendant's employees and e-mails of communications between the defendant's employees and the victim's sisters. The defendant asserted an exemption to the latter records, arguing that the defendant was advocating for the sisters' interest, so that although not a traditional attorney-client relationship, it created the perception of a victim/survivor and attorney relationship, which would require the sisters' waiver to release (5 ILCS 140/7(1)(n) (West 2016)). The defendant also asserted that the sisters' right to privacy outweighed any public interest in the records (*id.* § 7(1)(c)). The defendant thus asserted that the records of communications between it and the victim's sisters were exempt from inspection and copying, except for two documents intended by the sisters to be formal statements to the circuit court, which the defendant tendered.

¶ 15    On September 1, 2016, the PAC issued an opinion concluding that the defendant had "improperly withheld certain records responsive to the plaintiff's March 4, 2016, FOIA request." The PAC concluded that the defendant improperly denied the plaintiff's request pursuant to section 7(1)(a) and any asserted common law privilege.  The PAC also determined that although two January 24, 2014, e-mails constituted privileged attorney-client communications, the defendant did not meet its burden to show that all the withheld e-mails regarding the plaintiff's prosecution, subsequent notification to the Secretary of State, and conduct after revocation of his driving privileges were exempt pursuant to section 7(1)(m) of the FOIA (*id.* § 7(1)(m)). Pursuant

6

to the letter, the PAC requested the defendant to produce additional responsive e-mails to the plaintiff, namely the internal e-mail communications with the exception of the two e-mails dated January 24, 2014, which were from attorneys outside the defendant's office, not internal legal communications, and constituted privileged attorney-client communications.

¶ 16    In its September 1, 2016, nonbinding opinion, the PAC further concluded, however, that much of the communications between the victim's family members and the defendant contained highly personal information and because of the level of detail, redaction would not prevent the family member from being identified. The PAC thus concluded that e-mails which tended to identify a particular family member as author or recipient may be withheld in their entireties under section 7(1)(c) of the FOIA (*id.* § 7(1)(c)), as the "disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information." With regard to the production of additional communications that the plaintiff contended the defendant had failed to furnish, the PAC noted that the defendant had stated that it had not maintained a complete copy of the packet of information sent to the Secretary of State and that the packet was not in the criminal case file in the possession of the special state's attorney handling the criminal prosecution. The PAC concluded that the search for the record was not inadequate. On September 13, 2016, the defendant mailed further documentation, including the remaining internal e-mails it had previously withheld, to the plaintiff in response to the PAC's opinion dated September 1, 2016.

¶ 17    In addition to the March 4, 2016, FOIA request, the plaintiff submitted three more FOIA requests. On August 26, 2016, the plaintiff submitted a second FOIA request to the defendant requesting "the appointment calendar for Tom Gibbons, Jennifer Mudge (nee. Vucich), Katie

7

Wykoff, and Desi Jellen for the period of September 25, 2013, to August 26, 2016 *** to include all records of meetings, including, but not limited to, the names of meeting attendees and locations that the meeting took place." After exercising the right to an extension to respond to the plaintiff's request, the defendant requested from the plaintiff an additional extension or a narrowing of his request, explaining that the plaintiff had requested over 4400 days of documents for four different individuals. On September 6, 2016, the plaintiff declined the requested extension, refused to narrow the scope of his request, and requested that the calendar entries be produced in an electronic format. On September 8, 2016, the defendant denied the request as one that could not reasonably be responded to without unduly burdening the defendant (*id.* § 3(g)).

¶ 18     On September 9, 2016, the plaintiff submitted a third FOIA request to the defendant seeking "via electronic means, disclos[ure] [of] all internal e[-]mails from June 10, 2015, to June 18, 2015, and March 27, 2015, to April 3, 2015." On September 22, 2016, after corresponding with the plaintiff, the defendant denied the request, explaining that given the magnitude of the broad request and the plaintiff's refusal to narrow the scope of the request, the defendant had determined the burden of the request outweighed the public interest of the requested information (*id.*).

¶ 19     On September 20, 2016, the plaintiff submitted a fourth FOIA request to the defendant. The plaintiff sought "via electronic means *** the calendars of Jennifer Mudge, Katie Wykoff, Thomas Gibbons, and Desi Jellen (the Victims' Right Advocate for Madison County) from the dates of June 27[,] 2014[,] to October 29[,] 2014[,] [including] all appointments with subject of the meetings and attendees." On October 4, 2016, after invoking the right to an extension, the defendant sent correspondence to the plaintiff stating that the requested documents totaled 184 pages, requesting payment for the copies, and advising the plaintiff that it was not feasible for the

8

defendant to provide the requested documents in an electronic format. On October 6, 2016, the plaintiff sent an e-mail to the defendant demanding production in electronic format and without redactions. On October 7, 2016, the defendant sent correspondence to the plaintiff explaining that the calendar entries redacted contained personal information exempted under section 7(1)(c) of the FOIA (*id.* § 7(1)(c)), private information exempted under section 7(1)(b) (*id.* § 7(1)(b)), communications involving attorney-client privilege exempted under section 7(1)(m) (*id.* § 7(1)(m)), information relating to crime victims protected by Illinois Rule of Professional Conduct 1.6, and information exempt under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2016)). On October 11, 2016, the defendant provided the plaintiff with the requested documents in a redacted form.

¶ 20    On June 19, 2017, the defendant located the August 2014 letters and enclosures sent to the Secretary of State regarding the plaintiff's driver's license. At the later hearing on FOIA civil penalties, the defendant's FOIA officer, David Jeffrey Ezra, testified that the letters had been misplaced in the defendant's office but were produced to the plaintiff as soon as they were discovered.

¶ 21                      B. Plaintiff's FOIA Complaint

¶ 22    On November 7, 2016, the plaintiff filed in the circuit court a complaint for injunctive and declaratory relief, alleging that his four FOIA requests directed to the defendant had been met with a pattern of noncompliance, partial compliance, delay, and obfuscation. The plaintiff alleged that the defendant had erroneously withheld documents from disclosure that would have been responsive to the plaintiff's requests on March 4, 2016, August 26, 2016, September 9, 2016, and September 20, 2016. The plaintiff sought, *inter alia*, an injunction requiring the defendant to disclose without improper redaction the requested records, a declaratory judgment

9

regarding exemptions asserted by the defendant, and an order requiring the defendant to pay a civil penalty of not less than $2500 nor more than $5000 for each occurrence, pursuant to section 11(j) of the FOIA (5 ILCS 140/11(j) (West 2016)). On January 26, 2017, the plaintiff filed an amended complaint naming the defendant, rather than Thomas Gibbons in his official capacity.

¶ 23 On March 9, 2017, on the plaintiff's motion, the circuit court ordered the defendant to provide an index of documents to which access had been denied, and on April 13, 2017, the defendant filed an "Index of Documents" with the circuit court. Pursuant to an affidavit submitted by Kyle Lane, an attorney retained to represent the defendant, Lane mailed the Index of Documents to the plaintiff on the evening of April 6, 2017, and on April 11, 2017, the plaintiff phoned Lane to discuss the Index of Documents he received in the mail. The Index of Documents filed in the circuit court provided as follows:

"March 4, 2016 Request

Redacted information related to communications between the [defendant] and the sisters of [the victim] redacted from correspondence found to be exempt from the disclosure under FOIA Section 140/7(1)(c) by [the PAC's] determination letter dated September 1, 2016 ***.

A letter and supporting documentation sent by [the defendant] to the Illinois Secretary of State in August 2014. Upon information and belief these documents were sent to the Special State's Attorney upon his appointment to prosecute the subsequent traffic proceeding against Plaintiff after he moved to vacate his original conviction. When the file was returned by the Special State's Attorney, the below-listed documents were no longer included in the file:

10

The Collinsville, Illinois Incident Report Form with the Illinois Traffic Crash Report;

The Traffic Crash Reconstruction Report;

Plaintiff's driver's abstract;

A copy of the Collinsville Police Department Citation;

A certified copy of the conviction; and

Victim Impact letters from the [victim's] sisters *** to the [trial court] presiding over Plaintiff's criminal case.

Redaction of information from meeting agenda in e-mail dated August 11, 2014[,] from Shannon Goforth to Jennifer Vucich regarding an individual subject to a then-pending confidential investigation. Exempt from disclosure under FOIA Sections 140/7(1)(c) and (d)(vii) because it would invade the privacy of the individual, disclose the fact that he or she was under investigation, and destroy the confidential nature of the investigation. [5 ILCS 140/7(1)(c), (d)(vii) (West 2016).]

Two internal e-mails of the [defendant] dated January 24, 2014[,] to be found to be exempt from disclosure under FOIA Section 140/7(1)(m) by the PAC in the determination letter dated September 1, 2016 ***.

August 26, 2016 Request

Calendar entries of Thomas, Gibbons, Katie Wykoff, Jennifer Mudge (nee Vucich), and Desi Jellen from September 25, 2013[,] through August 26, 2016[,] to the extent said information was not produced in response to Plaintiff's September 20, 2016[,] FOIA request. Denied as unduly burdensome under FOIA Section 140/3(g) because it was a blanket request for the above individuals' calendars for a three-year period, which

11

[the plaintiff] refused to narrow down. Additionally, as stated below, the calendar entries for these individuals include their private information [Section 140/7(1)(c)], unique identifiers of persons [Section 140/3(b)], communications protected by the attorney-client privilege [Section 140/7(1)(m)], and/or confidential information relating to the representation of a client [Illinois [R]ule of Professional Conduct 1.6] that are exempt from disclosure under FOIA. [5 ILCS 140/3(b), (g); 5 ILCS 140/7(1)(c), (1)(m) (West 2016).]

### September 9, 2016 Request

Internal e-mails of the [defendant] for the periods June 10, 2015[,] through June 18, 2015[,] and March 27, 2015[,] through April 3, 2015[,] to the extent said information was not produced in response to Plaintiff's March 4, 2016[,] FOIA request. Denied as unduly burdensome under FOIA Section 140/3(g) because it was a blanket request for all internal e-mails of thirty (30) attorneys, twenty-two (22) clerical staff, and nine interns/clerks, which Plaintiff refused to narrow down.

### September 20, 2016 Request

Information redacted from calendar entries for Thomas Gibbons, Katie E. Wykoff, and Jennifer Mudge (nee Vucich), and Desi Jellen from June 27, 2014[,] through October 29, 2014. The redacted information concerned the private information of the above individuals [Section 140/7(1)(c)], unique identifiers of persons [Section 140/3(b)], communications protected by the attorney-client privilege [Section 140/7(1)(m)], and/or confidential information relating to the representation of a client [Illinois Rule of Professional Conduct 1.6] that are exempt from disclosure under FOIA."

12

¶ 24 In the Index of Documents, the defendant asserted that with regard to the documents omitted from the file returned from the special state's attorney, the defendant had attempted to reconstruct the file and provided to the plaintiff the Collinsville, Illinois, Incident Report Form with the Illinois Traffic Crash Report, the most recent version of the plaintiff's driver's abstract (at the time), a copy of the Collinsville Police Department citation, and letters believed to be the victim impact letters sent to the trial court presiding over the plaintiff's criminal case. The defendant explained that a certified copy of the plaintiff's conviction could not be located and a copy could not be obtained because the conviction was vacated. The defendant noted that the PAC, in its determination letter dated September 1, 2016, declined to take further action regarding these documents because it concluded that the defendant's search for these records was not inadequate.

¶ 25 Thereafter, the circuit court ruled on what further documents were to be produced and which documents remained exempt, and when necessary, the circuit court performed an *in camera* view of the withheld documents. As such, the defendant produced further documents to the plaintiff during the litigation, including documents responsive to the August 26, 2016, and September 9, 2016, requests, once the circuit court narrowed the plaintiff's initial requests.

¶ 26 At the hearing on the imposition of a civil penalty, held on February 1, 2018, and April 25, 2018, the circuit court set out that it was denying a civil penalty award pursuant to section 11(j) (5 ILCS 140/11(j) (West 2016)) for anything other than items the PAC found were not properly exempted from production in its September 1, 2016, letter. With respect to those items, the plaintiff questioned Ezra, the defendant's FOIA officer who handled the plaintiff's last three FOIA requests. Ezra testified that with regard to the March 4, 2016, request, responded to by McGuire, some of the defendant's records had been stored in the Wood River Township Hospital

13

area. Ezra testified, however, that in June 2017, the mislocated packet was located on a shelf in a manila folder under other materials on a bookcase in the defendant's office and had not been stored in a typical storage place.

¶ 27    Ezra testified that the August 2014 packet had been misplaced within the office, that McGuire had gone to great lengths to reconstruct the packet, and that he had no reason to believe that the recovered packet was any different than the reconstructed packet previously submitted. Ezra testified that once the documents were found, they were immediately provided to the plaintiff.

¶ 28    In its August 23, 2018, judgment, the circuit court noted that in accord with civil discovery practice in litigation, it had allowed for a greater scope of discovery than that required by the FOIA. The circuit court also noted that the items recommended for release by PAC were "generally produced in one form or another," and thus, the plaintiff's request for further discovery was moot.

¶ 29    With regard to the plaintiff's request for a civil penalty as permitted under section 11(j) of the FOIA (5 ILCS 140/11(j) (West 2016)), the circuit court held that some items were produced after considerable delay, "which was attributed to inexplicable misplacement." The court held that the "process leading to the loss was entirely unnecessary and reflect[ed] an intent to not produce the materials." The circuit court found the minimum civil penalty appropriate given the "nature of Plaintiff's quest and limited material recovery, and limited significance to the public good." Accordingly, the circuit court entered a civil penalty of $2500, the minimum as provided pursuant to statute. The circuit court also awarded the plaintiff court costs of $227.

¶ 30    On September 21, 2018, the plaintiff filed a motion to reconsider the circuit court's order. The plaintiff requested the disclosure of all previously withheld documents and the assessment of

14

fines. On September 24, 2018, the defendant filed a motion to reconsider, requesting the court to vacate the award of civil penalties and costs. The defendant argued that the evidence established that it had responded to the plaintiff's FOIA requests by providing information, notifying the plaintiff of what the defendant reasonably believed to be statutory exemptions to providing information, or sought extensions pursuant to the FOIA and then either produced information or cited exemptions. The defendant further argued that the evidence demonstrated that when the PAC ruled that documents were required to be produced under the FOIA, the defendant produced those records it was able to locate. The evidence also established that some of the records, which were not found during applicable compliance periods, were located after further search and produced to the plaintiff once found. The defendant further asserted that the evidence had established that the plaintiff had received the records he sought.

¶ 31    On December 7, 2018, the circuit court entered its order denying the parties' motions to reconsider. In its order, the circuit court noted that it did not grant relief with regard to the production of documents but exclusively addressed the issue of penalties. The circuit court found as follows:

> "In the case at bar, even taken at its most charitable, the [defendant] sequestered all documents for which it had withheld production after claim of exception had been previously denied. It then delivered the documents to its FOIA Officer, not for production but to raise new objections, and the FOIA Officer then is alleged to have promptly misfiled/lost the documents thereafter."

¶ 32    On January 7, 2019, the plaintiff filed a timely notice of appeal, and the defendant filed a timely notice of cross-appeal. In his notice of appeal, the plaintiff stated that he sought an order

15

changing the judgment to provide for: "[r]elease of all documents that were not proven to be exempt under FOIA" and "[c]hange [of] the civil penalties award."

¶ 33                                    II. ANALYSIS

¶ 34                              A. Brief Deficiencies

¶ 35    Initially, the defendant argues that the plaintiff's brief violates Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), warranting either dismissal of the plaintiff's appeal or disregard of several sections and arguments of his brief. Specifically, the defendant argues that the plaintiff's brief violates Rule 341(h) in the following respects: (1) the plaintiff's brief contains an incomplete "Points and Authorities" section, (2) the plaintiff's brief contains no "Standard of Review" section with citation to authority, (3) the plaintiff's brief fails to reference the record to support statements of fact or evidence, and (4) the plaintiff's brief fails to provide specific and clear arguments.

¶ 36    We acknowledge that the appellate court has discretion to strike a brief, to dismiss an appeal, or to disregard an appellant's arguments where the appellant's brief violates our supreme court rule requirements. *Budzileni v. Deptartment of Human Rights*, 392 Ill. App. 3d 422, 440 (2009). Nevertheless, where violations of the supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted. *Id.* In this case, because the plaintiff's violations are not so flagrant so as to preclude review, we elect to disregard the offending portions and turn to the merits on appeal.

¶ 37                                 B. The FOIA

¶ 38    All records in the custody of a public body are presumed open to inspection or copying. 5 ILCS 140/1.2 (West 2016). If the public body asserts an exemption from disclosure, the public body "has the burden of proving by clear and convincing evidence" that the record is exempt

16

from disclosure. *Id.* When a public body denies a FOIA request, it must notify the requester of the denial in writing and offer the reasons the request was denied, including a "detailed factual basis" for the claimed exemption. *Id.* § 9(a). When the public body claims exemptions under FOIA's section 7, the denial notice shall specify the exemption claimed and the specific reasons for the denial, including the factual basis and supporting legal citations. *Id.* § 9(b). The trial court may conduct an *in camera* inspection of the requested documents to determine whether the claimed exemptions apply. *Id.* § 11(f). Where a public body willfully and intentionally fails to comply with the FOIA, it is subject to a civil penalty ranging from $2500 to $5000 for each occurrence of noncompliance. *Id.* § 11(j). "The public body satisfies its burden when it provides a detailed justification for the claimed exemption which addresses the specific documents requested and allows for adequate adversarial testing." *Turner v. Joliet Police Department*, 2019 IL App (3d) 170819, ¶ 10.

¶ 39    Section 3(g) of the FOIA provides that requests for records falling within a category shall be complied with unless compliance would be unduly burdensome, there is no way to narrow the request, and the burden on the public body outweighs the public interest in the information. 5 ILCS 140/3(g) (West 2016). FOIA exemptions found in section 7(1) of the FOIA include, in relevant part:

>    "(a) Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law.

>    (b) Private information, unless disclosure is required by another provision of this Act, a State or federal law or a court order.

>    ***

17

(c) Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. 'Unwarranted invasion of personal privacy' means the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy.

(d) Records in the possession of any public body created in the course of administrative enforcement proceedings, and any law enforcement or correctional agency for law enforcement purposes, but only to the extent that disclosure would:

\* \* \*

(vii) obstruct an ongoing criminal investigation by the agency that is the recipient of the request.

\* \* \*

(m) Communications between a public body and an attorney or auditor representing the public body that would not be subject to discovery in litigation, and materials prepared or compiled by or for a public body in anticipation of a criminal, civil[,] or administrative proceeding upon the request of an attorney advising the public body, and materials prepared or compiled with respect to internal audits of public bodies.

(n) Records relating to a public body's adjudication of employee grievances or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed." *Id.* § 7(1)(a), (b), (c), (d)(vii), (m), (n).

18

¶ 40 "A person whose request to inspect or copy a public record is denied by a public body *** may file a request for review with the [PAC] established in the Office of the Attorney General not later than 60 days after the date of the final denial." *Id.* § 9.5(a). "Upon receipt of a request for review, the [PAC] shall determine whether further action is warranted." *Id.* § 9.5(c). The PAC then shall forward a copy of the request for review to the public body and shall specify the records that the public body shall furnish to facilitate the review. *Id.* The public body shall provide copies of the records requested and shall otherwise fully cooperate with the PAC. *Id.* "Under FOIA, the Attorney General, through the [PAC], can render an advisory opinion or a binding opinion." *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶ 56; 5 ILCS 140/9.5(f) (West 2016). "Advisory opinions are not subject to administrative review." *City of Champaign*, 2013 IL App (4th) 120662, ¶ 56; 5 ILCS 140/11.5 (West 2016). "In amending FOIA and establishing the Attorney General's [PAC], the legislature sought to create an expeditious proceeding for the parties to obtain guidance and avoid having to bring a court action." *City of Champaign*, 2013 IL App (4th) 120662, ¶ 56.

¶ 41                              i. *Index of Documents*

¶ 42    On appeal, the plaintiff argues that the defendant's Index of Documents was merely a generalization of documents withheld without any description of the nature of the contents of each document withheld or the deletions from released documents.

¶ 43    Section 11(e) of the FOIA provides that on motion of the plaintiff, the court shall order the public body to provide an index of the records to which access has been denied. 5 ILCS 140/11(e) (West 2016). The index shall include the following:

"(i) A description of the nature or contents of each document withheld, or each deletion from a released document, provided, however, that the public body shall not be required to disclose the information which it asserts is exempt; and

(ii) A statement of the exemption or exemptions claimed for each such deletion or withheld document." *Id.* § 11(e)(i), (ii).

¶ 44 The Index of Documents provided by the defendant described the nature or contents of each document withheld, or each deletion from a released document, as well as a statement of the claimed exemption, as follows: (1) "[r]edacted information related to communications between [the defendant] and the sisters of [the victim killed by the plaintiff's truck]" and an exemption claimed under section 7(1)(c); (2) redacted information from meeting agenda in e-mail dated August 11, 2014, regarding an individual subject to confidential investigation and an exemption claimed under sections 7(1)(c) and (d)(vii); (3) redacted e-mails dated January 24, 2014, and an exemption claimed under section 7(1)(m); (4) withheld "[c]alendar entries of Thomas Gibbons, Katie Wykoff, Jennifer Mudge (nee Vucich), and Desi Jellen from September 25, 2013[,] through August 26, 2016," and an exemption claimed under sections 3(g) and 7(1)(b), (c), and (m); (5) withheld "[i]nternal e[-]mails of the [defendant] for the periods June 10, 2015[,] through June 18, 2015[,] and March 27, 2015[,] through April 3, 2015," and an exemption claimed under section 3(g); and (6) "[i]nformation redacted from calendar entries for Thomas Gibbons, Katie E. Wykoff, and Jennifer Mudge (nee Vucich), and Desi Jellen from June 27, 2014[,] through October 29, 2014," and exemption claimed under sections 3(b), section 7(1)(c), and section 7(1)(m). We agree with the defendant that these descriptions adequately identified the nature or contents of the withheld documents or deletions so that the plaintiff knew what had been

20

withheld or redacted and the circuit court could rule on production or order *in camera* review of the same.

¶ 45    The plaintiff also argues that the Index of Documents was inadequate because it had "no statement of the exemption or exemptions claimed" as required by section 11(e)(ii) of the FOIA (5 ILCS 140/11(e)(ii) (West 2016)). As noted by the defendant, however, in making this argument, the plaintiff ignores that the Index of Documents included a statement of exemptions claimed for each deletion or withheld document. We thus agree with the defendant that the Index of Documents sufficiently set forth a description of the nature or contents of each withheld document and deletion, that it sufficiently set forth a statement of exemption claimed for each withheld document or deletion, and that the plaintiff has failed to explain how the Index of Documents did not meet the FOIA requirements. *Id.* § 11(e)(i); see also *Barth v. State Farm Fire & Casualty Co.*, 371 Ill. App. 3d 498, 507 (2007) (a conclusory assertion, without a supporting analysis, is insufficient). We thus reject the plaintiff's arguments on appeal with regard to the Index of Documents.

¶ 46                              ii. *Production of Additional Documents*

¶ 47    The plaintiff next argues that the circuit court erred by not requiring the defendant to produce documents that were responsive to his requests and were not proven with clear and convincing evidence to be exempt.

¶ 48    The circuit court explained in its August 23, 2018, judgment that during litigation it had allowed for a greater scope of discovery than that allowed by the FOIA, and the circuit court ruled that the defendant had produced all the required documents. Concluding that the plaintiff's prayers for document production were satisfied, the circuit court held that the plaintiff's additional requests were moot. On appeal, we have reviewed the record and find no error in the

21

circuit court's ruling with regard to document production. Moreover, the plaintiff fails to support his assertions on appeal with logical and reasoned argument. As noted by the defendant, the plaintiff fails to explain or specify what documents or categories of documents were wrongfully denied to him, which ruling on the claimed exemptions he challenged, and which exemptions were not ruled on by the circuit court. "It is a rudimentary rule of appellate practice that an appellant may not make a point merely by stating it without presenting any argument [or appropriate legal authority] in support." *Prairie Rivers Network v. Illinois Pollution Control Board*, 335 Ill. App. 3d 391, 408 (2002). "A court of review 'is not simply a depository into which an appealing party may dump the burden of argument and research.' " *In re Austin C.*, 353 Ill. App. 3d 942, 948 (2004) (quoting *In re Estate of Thorp*, 282 Ill. App. 3d 612, 616 (1996)). We therefore reject the plaintiff's bald assertion.

¶ 49                                    iii. *Civil Penalty*

¶ 50    Next, the plaintiff takes issue with the circuit court's order imposing a civil penalty against the defendant. The plaintiff essentially argues that the circuit court had no discretion to limit the civil penalty imposed to a single penalty of $2500 and that the circuit court erred when it failed to assess civil penalties with regard to the three FOIA requests that followed his March 4, 2016, request.

¶ 51    The defendant counters that the circuit court determined that penalties were only warranted relating to the March 4, 2016, request because the August 26, 2016, September 9, 2016, and September 20, 2016, FOIA requests were very broad and burdensome, requesting over 4400 days of calendar entries for four different individuals, all internal e-mails for the entire office for 18 days, which covered e-mails for 61 employees, and over 140 days of calendar entries for four individuals. The defendant also notes that it timely produced 184 pages of

22

documents responsive to this last request shortly after it was made; however, the plaintiff refused to accept production in paper format. The defendant argues that these requests were burdensome, not only due to the volume of documents the plaintiff sought but because of the plaintiff's repeated refusal to cooperate in narrowing his requests as well as his refusal to allow the defendant sufficient time to gather the requested voluminous documents.

¶ 52 The record reveals that the circuit court denied civil penalty relief for any request other than the March 4, 2016, request, which resulted in the September 1, 2016, letter in which the PAC determined that some items were improperly withheld pursuant to inapplicable exemptions. We find no error in the circuit court's conclusion that the defendant acted in good faith in response to the August 26, 2016, September 9, 2016, and September 20, 2016, FOIA requests, and the plaintiff fails to specify on what basis civil penalties would be properly awarded with regard to these requests. Accordingly, we find that the circuit court properly declined to award a civil penalty on the bases of these requests.

¶ 53 On cross-appeal, the defendant takes issue with the circuit court's order imposing a civil penalty against it with regard to the March 4, 2016, request. The defendant argues that the circuit court erred in awarding the plaintiff civil penalties under section 11(j) of the FOIA (5 ILCS 140/11(j) (West 2016)) because the evidence did not support a finding of a willful and intentional or a bad faith violation of the FOIA. We agree with the defendant.

¶ 54 On appeal, we review the circuit court's credibility determinations, including the circuit court's factual finding that the defendant willfully and intentionally failed to comply with the FOIA (or otherwise acted in bad faith), under the manifest-weight-of-the-evidence standard. See *Rock River Times v. Rockford Public School District 205*, 2012 IL App (2d) 110879, ¶ 48 (review of factual finding that school willfully and intentionally failed to comply with the FOIA

23

under manifest-weight-of-the-evidence standard); *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 60 (a reviewing court should overturn a factual finding only if it is against the manifest weight of the evidence); *Schroeder v. Winyard*, 375 Ill. App. 3d 358, 364 (2007) (whether a person acted willfully is typically a question of fact reserved for the trier of fact). A trial court's finding is against the manifest weight of the evidence when an opposite conclusion is apparent or when the finding appears to be unreasonable, arbitrary, or not based on the evidence. *Goldberg*, 2012 IL App (1st) 110620, ¶ 60. "Once the trial court finds a willful and intentional failure to comply with the FOIA, or that the party acted in bad faith, it is required to, *i.e.*, 'shall,' impose a penalty." *Rock River Times*, 2012 IL App (2d) 110879, ¶ 49; 5 ILCS 140/11(j) (West 2016). "However, the amount of the penalty is within the trial court's discretion, so long as it is between $2,500 and $5,000 for each violation." *Rock River Times*, 2012 IL App (2d) 110879, ¶ 49. "Therefore, an abuse-of-discretion standard of review is appropriate for the amount of the penalty." *Id.*

¶ 55    Section 11(j) of the FOIA provides:

"If the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence. In assessing the civil penalty, the court shall consider in aggravation or mitigation the budget of the public body and whether the public body has previously been assessed penalties for violations of this Act." 5 ILCS 140/11(j) (West 2016).

¶ 56    Accordingly, to warrant an award of civil penalties against a public body, section 11(j) of the FOIA requires a finding that the "public body willfully and intentionally failed to comply with [the] Act, or otherwise acted in bad faith." *Id.* The Act itself does not define the terms

24

"willfully," "intentionally," or "bad faith." The Merriam-Webster Dictionary defines "willful" as: "done deliberately: intentional." Willful Definition, MERRIAM WEBSTER, http://merriam-webster.com (last visited Aug. 5, 2020). It defines "intentional" as: "done by intention or design." Intentional Definition, MERRIAM WEBSTER, http://merriam-webster.com (last visited Aug. 5, 2020). Finally, it defines "bad faith" as "lack of honesty in dealing with other people." Bad Faith Definition, MERRIAM WEBSTER, http://merriam-webster.com (last visited Aug. 5, 2020). Accordingly, based upon the plain meaning of these terms, to warrant an award of civil penalties under section 11(j), the public body must not only have violated the FOIA but must have done so deliberately, by design, or with a dishonest purpose.

¶ 57 In *Rock River Times*, 2012 IL App (2d) 110879, the newspaper petitioned under the FOIA for a civil penalty against the school district based on the school district's willful and intentional failure to comply with the FOIA. In its petition, the newspaper alleged that the school district acted in bad faith by attempting to hide the contents of a document despite the PAC's written instructions to release the document. The newspaper alleged that the school district had refused to comply with its request for the document by attempting to invoke a series of exemptions under the FOIA, even after the PAC advised the school district that its exemptions were baseless and directed the school to release the document. Instead of complying with PAC's directive, the school district referred to PAC's determination as "erroneous" and sought to invoke a third, inapplicable exemption before it ultimately released the document, stating that the PAC had orally informed it that the third exemption was inapplicable. The newspaper argued that the trial court should grant its request for attorney fees and a civil penalty because it obtained access to the document only as a result of filing suit. The newspaper also produced an

25

affidavit from the PAC stating it never issued an oral opinion on the third exemption at all. *Id.* ¶¶ 11-14.

¶ 58    In assessing a civil penalty, the trial court found "most troubling" the school district's position that, after its first two claimed exemptions fell through, it could continue to assert additional exemptions. *Id.* ¶ 52. The trial court thus concluded that the school willfully and intentionally violated the FOIA by raising a third exemption after the first two were denied and by looking "for a way to save face" rather than simply admit that it was wrong. *Id.* ¶ 54. The trial court stated that "the school's course of conduct, viewed in its totality, reflected a lack of good faith in responding to the newspaper's request." *Id.* ¶ 23. On appeal, the court found the trial court's decision that the school willfully and intentionally violated the FOIA was not against the manifest weight of the evidence. *Id.* ¶ 54.

¶ 59    In this case, the circuit court found in its August 23, 2018, order awarding civil penalties that "the [d]efendant failed to produce materials in accord with the [PAC's] advisory recommendations," that "some items were produced after considerable delay which was attributed to inexplicable misplacement," and that "the process leading to the loss was entirely unnecessary and reflected on an intent to not produce those materials." The circuit court further found in its December 7, 2018, order denying the parties' posttrial motions that "taken at its most charitable, [the defendant] sequestered all documents for which it had withheld production after claim of exception had been previously denied [and] then delivered the documents to its FOIA [o]fficer, not for production but to raise new objections, and the FOIA [o]fficer then is alleged to have promptly misfiled/lost the documents thereafter."

¶ 60    However, the record does not support the circuit court's conclusions. Unlike *Rock River Times*, the defendant did not willfully and intentionally violate the FOIA by raising continued

exemptions despite the PAC's guidance. Instead, once the PAC opined on September 1, 2016, that some of the withheld documents should be produced to the plaintiff, the defendant complied with the PAC's September 1, 2016, opinion and released those documents. The plaintiff's complaint acknowledged that "[o]n September 13, 2016, [the defendant] mailed further documentation to the plaintiff in response to the letter dated September 1, 2016[,] [with the PAC's opinion]." The defendant conceded to the PAC's opinion and no longer claimed an exemption regarding those documents. With the exception of the misplaced Secretary of State letters, the defendant provided to the plaintiff the documents the PAC opined should be disclosed.

¶ 61    This case is more akin to *Turner*, 2019 IL App (3d) 170819. In *Turner*, the plaintiff filed a FOIA request with the police department seeking his criminal records. *Id.* ¶ 3. The police department responded, granting the request in part and denying it in part, and provided redacted portions of the records pursuant to FOIA exemptions. *Id.* Turner filed a complaint seeking civil penalties and costs, and in its response, the police department acknowledged that it inadvertently missed some of the plaintiff's records, attached the additional records to its motion to dismiss, and served them on Turner. *Id.* ¶ 4. Turner filed a response requesting an *in camera* review of the records and an index, description, and statement of exemptions for the redacted records. *Id.* ¶ 5. The court conducted the *in camera* review, and the police department provided an index and descriptions of the redactions. *Id.* The trial court granted the police department's motion to dismiss with prejudice. *Id.*

¶ 62    On appeal, the plaintiff argued that the police department's failure to comply was willful and intentional. *Id.* ¶ 8. However, the appellate court held that the plaintiff's complaint lacked "any allegations of willful and intention violation of FOIA" by the police department. *Id.* ¶ 21.

The appellate court further found "no evidence of willful and intentional noncompliance" with the plaintiff's FOIA request. The appellate court noted that the police department had asserted the information it had redacted was properly exempted and had submitted to the plaintiff the reasons for denial and a detailed factual basis for the exemptions it claimed. *Id.* ¶ 22. The police department had provided the unredacted documents to the trial court, which viewed them *in camera* and determined that the claimed exemptions applied. *Id.* The appellate court noted that when the exemptions were no longer applicable, the police department released the requested documents to the plaintiff. *Id.* Accordingly, the appellate court found no civil penalty warranted as there was no willful and intentional failure to comply with FOIA's requirements. *Id.*

¶ 63    In this case, the circuit court's award of civil penalties appears to primarily involve the defendant's failure to initially produce complete copies of the 2014 letters sent to the Secretary of State's office. The record reveals that on July 6, 2016, McGuire e-mailed the plaintiff "hop[ing] [to] resolv[e] the pending dispute." In the e-mail, McGuire understood the plaintiff's complaint to the PAC to concern "the letter that was sent to the Secretary of State by our First Assistant in August of 2014." McGuire understood that the plaintiff wanted a copy of that letter as well as a copy of all supporting documents sent along with that letter. McGuire explained that he did not withhold the documents because of any claim of exemptions but because he believed the August 2014 letter and supporting documents were no longer in the defendant's possession but were in the possession of the special state's attorney appointed in June 2015 to represent the State in the plaintiff's traffic case. McGuire proposed that he contact the special state's attorney and ask for a copy of the letter at issue, along with supporting documents, and forward a complete copy with no redactions. McGuire thereafter requested return of the file, but when the documents were not located in the file, he recreated the August 2014 letter with its enclosures,

28

with the exception of the plaintiff's conviction, which had since been vacated and no longer existed. The record reveals that the plaintiff received these documents, including the letters written by the victim's sisters, in July 2016.

¶ 64    Accordingly, there was no evidence before the circuit court that these documents were withheld from production to the plaintiff for any reason other than that they were accidentally misplaced. See *Miller v. United States Department of State*, 779 F.2d 1378, 1386 (8th Cir. 1985) (discovery of additional documents is not conclusive of agency bad faith since belated discovery may result merely from administrative inefficiency or reluctant diligence on the part of the agency); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (discovery of additional documents indicated "neither artifice nor subterfuge but rather, at wors[t], administrative inefficiency"). Moreover, the defendant's forthright disclosure that it later located the misplaced file in an unlikely location in June 2017, and its immediate release of those documents to the plaintiff after their discovery, suggested good faith on the part of the agency. See *Maynard v. Central Intelligence Agency*, 986 F.2d 547, 565 (1st Cir. 1993); see also *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) ("what is expected of a law-abiding agency is that it admit and correct error when error is revealed").

¶ 65    Accordingly, the evidence before the circuit court did not support a conclusion that the defendant willfully and intentionally failed to comply with the FOIA or otherwise acted in bad faith and thus did not warrant a civil penalty imposed against the defendant. Therefore, we reverse that portion of the circuit court's order that imposed a civil penalty against the defendant.

¶ 66                              III. CONCLUSION

¶ 67     For the foregoing reasons, we affirm the judgment of the circuit court in all respects, except we reverse that portion of the circuit court's judgment entering a civil penalty against the defendant.


¶ 68     Affirmed in part and reversed in part.